IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Velocity Express Corporation, et al., | Case No. 09-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 507(a)(4) AND 507(a)(5) (A) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION WAGES AND SALARIES, AND HONOR CERTAIN EMPLOYEE BENEFITS, (B) DIRECTING ALL BANKS TO HONOR PRE-PETITION CHECKS FOR PAYMENT OF PRE-PETITION EMPLOYEE OBLIGATIONS, AND (C) AUTHORIZING THE DEBTORS TO HONOR WORKERS' COMPENSATION OBLIGATIONS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed undersigned counsel, hereby move this Court (the "Motion") for entry of an Order (A) authorizing the Debtors to pay pre-petition wages and salaries and honor certain Employee (as defined below) benefits; (B) directing all banks to honor pre-petition checks for payment of pre-petition Employee obligations; and (C) authorizing the Debtors to honor workers' compensation obligations. In support of the Motion, the Debtors rely on the Declaration of Vincent A. Wasik, Chief Executive Officer of Velocity Express Corporation, in Support of Chapter 11 Petitions and First Day Pleadings (the "Wasik Declaration"), filed concurrently herewith. In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The following subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Velocity Express Corporation (5929): CD&L, Inc (0958); Clayton/National Courier Systems, Inc (6454); Click Messenger Service, Inc (6117); Olympic Courier Systems, Inc (3847); Securities Courier Corporation (0185); Silver Star Express, Inc (8303); U-Ship International, Ltd (3181); Velocity Express Leasing, Inc (6733); Velocity Express, Inc (4426); Velocity Systems Franchising Corporation (9687); VXP Leasing Mid-West, Inc (0846); and VXP Mid-West, Inc (0845) The Debtors' principal address is One Morningside Drive North, Building B, Westport, CT 06880

## JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.     The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 363(b), 507(a)(4), and 507(a)(5), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.     On September 24, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

4.     The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.     No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

6.     The Debtors have one of the largest nationwide networks of time-definite logistics solutions in the United States and are a leading provider of distribution, scheduled, and expedited logistics services. They operate primarily in the United States with limited operations in Canada.

7.     On March 13, 2009, the Debtors entered into a senior secured revolving credit agreement (as amended, the "Credit Agreement") with a syndicate of lenders led by Burdale Capital Finance, Inc. ("Burdale"). The Credit Agreement provides for up to $12.0 million of aggregate financing, $7.5 million of which may be in the form of letters of credit. In addition, in connection with the acquisition of the CD&L portion of the Debtors' business, the Debtors issued certain senior secured notes (the "Senior Notes") and warrants. As of the Petition Date, the Debtors owed approximately $103 million under the Senior Notes.

8.    The Debtors have been impacted by the significant downturn in the national economy over the past year. Many of the Debtors' customers reduced their shipping expenses as their own sales decreased. As a result, over the past 12 months, the Debtors' revenues have dropped by approximately 35%. In addition, the Debtors are also party to approximately ten (10) class actions and have received several assessments from state administrative agencies alleging that the Debtors improperly classified individuals as independent contractors rather than employees.

9.    The Debtors filed these cases to effectuate the balance sheet restructuring embodied in the sale of their assets to ComVest Velocity Acquisition I, LLC or a competing bidder. The Debtors believe that the reduced debt obligations resulting from this process will allow them to thrive going forward.

## THE EMPLOYEES

10.    As of the Petition Date, the Debtors employ approximately 1,332 persons, of whom approximately 170 were primarily employed in various management, sales, and other corporate positions, approximately 1,093 were employed as warehouse workers and operations personnel, and 69 were employed in connection with operations in Canada (each an "Employee" and collectively the "Employees"). The Employees possess the institutional knowledge, experience and skills necessary to support the Debtors' business operations during the Chapter 11 reorganization process. Because of the Debtors' need for the continued commitment of the Employees, the Debtors are requesting the relief herein to minimize any hardships to the Employees resulting from the commencement of the Debtors' Chapter 11 cases. The Debtors must take all necessary steps to retain their Employees and bolster employee morale in order to succeed in their efforts to preserve and maximize the value of their estates.

11.    Accordingly, by this Motion, the Debtors seek authority to pay and honor their pre-petition obligations, pay Unpaid Compensation (as defined below), pay employee withholding taxes and employer taxes (including but not limited to federal, state, employment, and other payroll and withholding taxes), honor vacation and personal time off obligations,

-3-

continue their workers' compensation programs, maintain employee benefits, continue garnishment and payroll deductions, reimburse Employees' business expenses, and honor miscellaneous Employee benefits that the Debtors have traditionally provided in the ordinary course of business (all such obligations to the Employees collectively, the "Employee Obligations").

## SUMMARY OF EMPLOYEE OBLIGATIONS

### A. Wages, Salaries and Other Compensation

12. As noted above, the Debtors employ approximately 1,332 Employees in the regions in which they operate. In the ordinary course of business, the Debtors coordinate their payroll through their payroll processor, Unicorn HRO.

13. Employees are paid on a bi-weekly basis and are generally paid in one week arrears (the "Pay Period"). Each week, the Debtors process a bi-weekly payroll for one or more of their divisions. The average bi-weekly payroll for the Debtors' Employees -- exclusive of sales commissions and bonuses -- is approximately $1,450,000. The Debtors also pay their sales Employees commissions based upon specified percentages of qualifying revenue for different categories of sales. The Debtors estimate that the total outstanding amount in salary, commissions and bonuses as of the Petition Date is approximately $1,650,000.

14. Additionally, the Debtors currently utilize 13 temporary employees through various temporary employment agencies (collectively, the "Temporary Employees"). As of the Petition Date, the Debtors have amounts owing to four temporary employment agencies in the aggregate amount of approximately $219,185. The Debtors only seek authority, pursuant to this motion, to pay the current obligations due to the Temporary Employees.

15. The Debtors also utilize approximately 2,400 independent contractors in the United States and 24 in Canada (the "Independent Contractors"), which are critical to the Debtors' business operations. Due to the structure of the Debtors' business, the Independent Contractors, who are primarily drivers, serve a function within the company as important as the

-4-

Employees. In light of the number of Independent Contractors used by the Debtors and the essential nature of the services they provide, it would be impossible for the Debtors to replace numerous Independent Contractors in a timely manner and without significant loss of revenue and customers. Thus, it is not unreasonable that the Debtors seek authorization to pay the Independent Contractors in this Motion.

16. In addition, due to the nature of their work, many of the Independent Contractors rely on their paychecks from the Debtors for their livelihood. Thus, any delay or failure in the Debtors' ability to meet their pre-petition obligations to the Independent Contractors may cause a great hardship in the lives of the Independent Contractors. In addition, if even one payment is missed, the Debtors believe the Individual Contractors may refuse to continue to do business with the Debtors.

17. The Debtors estimate that the total amount outstanding of compensation owed to the Independent Contractors as of the Petition Date is approximately $2.3 million.

18. By this Motion, the Debtors seek an order authorizing, but not directing them, to pay all outstanding wages, salaries, and other compensation owed to the Employees, Temporary Employees, and Independent Contractors as of the Petition Date, aggregating approximately $3,950,000.

**B.      Vacation, Sick, Holiday, and other Leave**

19. Full-time Employees are covered by the Debtors' paid time off policy (the "PTO Policy"), which may be used for sick leave, vacation, or personal matters. Under the PTO Policy, full-time customer site warehouse Employees are eligible for up to 80 hours of paid time off ("PTO") and sales, general and administrative Employees are eligible for up to 160 hours of PTO, generally depending on the number of years of credited service. PTO accrues at the rate of 1/12 (one-twelfth) per completed calendar month and may not be carried over from calendar year to year. The Debtors do not anticipate a cash payout for unused PTO days as of the Petition Date.

20. Full-time customer site Employees have the following paid holidays each

-5-

year: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. Those Employees must work on the workdays immediately before and after the holiday. Holidays are not counted as hours worked for the purpose of computing overtime. The sales, general and administrative Employees have the same six paid holidays and, in addition, 2 floating holidays.

21.     The Debtors provide eligible Employees up to twelve (12) weeks of family and medical leave (the "FML Policy") per year for serious personal health conditions, to care for family members with serious health conditions, or to care for a child after birth, adoption, or foster care placement. Leave under the FML Policy is without pay; however, all accrued but unused PTO must be used before the unpaid portion of the FML Policy begins. Eligible disability or workers' compensation benefits continue under the FML Policy. During approved leave under the FML Policy, the Debtors will continue to maintain primary health insurance coverage and the eligible Employee is required to make normal monthly payments for the coverage.

22.     If a member of an Employee's immediate family passes away, the Debtors allow up to three (3) days off with pay in order to assist with arrangements or to attend the funeral.

23.     In the event that an Employee is summoned to jury duty or subpoenaed to appear in court as a witness, the Debtors will continue the Employee's normal rate of pay for up to a maximum of eight (8) hours per day.

24.     By this Motion, the Debtors seek an order authorizing, but not directing them, to honor all liabilities to their Employees with respect to vacation, sick pay, personal days, paid holidays, and other benefits that arose prior to the Petition Date and to continue their pre-petition policies with respect to same going forward. The Debtors anticipate that their Employees will utilize any accrued vacation, sick days, personal days and other such leave in the ordinary course, without resulting in any material cash flow requirements beyond the Debtors' normal payroll obligations.

-6-

## C.     Insurance Benefits

25.     In the ordinary course of their business, the Debtors provide medical, prescription drug, dental, and vision insurance to their eligible Employees (collectively, the "Health Benefits"). The Debtors utilize group plans with a number of health care providers, including United Healthcare, Dental - Assurant Employee Benefits and Vision Service Plan (VSP). Eligible Employees are also entitled to participate in the Debtors' short-term disability, long-term disability and life insurance programs (collectivel y with the Health Benefits, the "Insurance Benefits").

### (i)     Medical, Prescription Drug, Dental and Vision Programs

26.     Full-time Employees who have been employed for 90 calendar days are eligible to receive Health Benefits. The Dental and Vision plans are 100% funded by each participating full-time Employee via deductions from their paycheck while the Debtors pay a portion of the Medical and Prescription Drug plans. Additionally, the Debtors fund approximately 50% of certain Health Benefits for high level executives. The Debtors' average monthly cost over a twelve (12) month period for providing the Health Benefits is approximately $100,840.

27.     As of the Petition Date, the Debtors do not believe there are any outstanding unpaid amounts for the Health Benefits.

### (ii)     Life and Disability Insurance Programs

28.     The Debtors participate in a plan by which their eligible full-time Employees may elect to pay for long-term or short-term disability insurance coverage through The Standard (the "Disability Insurance") at 100% cost to the Employees. Full-time Employees who have been employed for 60 calendar days are eligible to enroll in Disability Insurance. As of the Petition Date, the Debtors do not believe there are any outstanding unpaid amounts for Disability Insurance.

29.     The Debtors offer their eligible full-time Employees certain life insurance and accidental death and dismemberment coverage (collectively, the "Life Insurance"). Eligible

-7-

Employees are provided Life Insurance at no cost to the Employees through The Standard. Eligible Employees are also given the opportunity to purchase supplemental life insurance (the "Supplemental Life Insurance") coverage through The Standard, with 100% of the cost funded by each participating Employee. Full-time Employees who have been employed for 60 calendar days are eligible to receive Life Insurance and enroll in Supplemental Life Insurance. Additionally, the Debtors also offer certain of their executives long-term disability and life insurance coverage with no Employee contribution expense. As of the Petition Date, the Debtors do not believe there are any outstanding unpaid amounts for the Life Insurance, including Employee contributions for the Supplemental Life Insurance coverage.

30.     The Debtors' average monthly cost over a twelve (12) month period for providing the Disability Insurance and Life Insurance to their Employees is approximately $109,680.

31.     By this Motion, the Debtors seek an order authorizing, but not directing them, to pay all amounts due and owing as of the Petition Date with respect to the Insurance Benefits and to continue such benefits post-petition.

**D.      Severance Benefit**

32.     The Debtors provide their non-exempt, full-time Employees with certain severance protection (the "Severance Protection") in the event of termination without cause, provided that the terminated Employee executes a general release. The separation benefit amount is contingent upon the Employee's years of service. In addition, the Debtors are parties to various employment agreements that provide for severance benefits. As of the Petition Date, the Debtors estimate that the outstanding amount payable with respect to the Severance Protection is approximately $11,540.

**E.      401(k) Retirement Plan**

33.     The Debtors have a defined savings plan for their Employees that is qualified under section 401(k) of the Internal Revenue Code (the "Retirement Plan"). The Retirement Plan is administered by Great-West Retirement Services. Employees who have been

-8-

employed for 60 calendar days are eligible to participate in the Retirement Plan. Pursuant to the Retirement Plan, elected amounts are deducted from each participating Employee's payroll check and transferred to the plan administrator. As of the Petition Date, the Debtors' estimated liability for the Savings Plan is approximately $38,000.

34. By this Motion, the Debtors seek an order authorizing, but not directing them, to pay all amounts owing as of the Petition Date with respect to the Savings Plan and to continue performing under the Savings Plan in the ordinary course of business.

**F.    Reimbursable Business Expenses**

35. As is customary with most businesses, the Debtors reimburse their Employees who incur and pay a variety of approved business-related expenses in the ordinary course of performing their duties (collectively, the "Employee Expense Obligations"). The Employees initially incur and pay such expenses and are subsequently reimbursed by the Debtors after submission and approval of expense reimbursement requests.

36. Because a significant lag time may occur between the time such expenses are incurred and the time an expense reimbursement request is submitted, it is difficult to determine with precision the aggregate outstanding amount of such Employee Expense Obligations. Currently, the Employee Expense Obligations are approximately $98,245 plus amounts in the approval process.

37. It would be patently inequitable to require Employees to personally bear any expenses that they incurred in furtherance of their responsibilities to the Debtors. Accordingly, the Debtors request authority, in their discretion and in the exercise of their business judgment, to continue to honor all of their Employee Expense Obligations in the ordinary course of business, regardless of when such obligations arose.

**G.    Workers' Compensation Obligations**

38. Under the laws of the various states in which the Debtors operate, the Debtors are required to maintain workers' compensation liability insurance and to provide the Employees with workers' compensation coverage for claims arising from or related to their

-9-

employment (the "Workers' Compensation Obligations"). The Debtors provide workers' compensation benefits to the Employees through an insured program with Arthur J. Gallagher & Company of New Jersey (the "Workers' Compensation Policy"). The Debtors' premium for the policy is approximately $30,000 per month. The Debtors are currently 4 months in arrears. The next installment is due October 1, 2009.

39.    Failure to maintain workers' compensation insurance in the various states in which the Debtors conduct business could result in the institution of administrative or legal proceedings and material fines against the Debtors and their officers and directors. The Debtors therefore seek authority to continue paying and/or contesting in good faith, as appropriate in the Debtors' business judgment, all outstanding amounts related to Workers' Compensation Obligations that arose prior to the Petition Date, including, without limitation, any payments for workers' compensation claims, premiums and fees owed for administrative costs, and other amounts required in connection with the Debtors' workers' compensation program, as such amounts become due in the ordinary course of the Debtors' business.

40.    In addition to the Workers Compensation Policy, the Debtors also require that all of the Independent Contractors that they contract with carry occupational accident insurance. In order to facilitate such coverage, the Debtors have arranged an Independent Contractor Courier Occupational Accident Insurance (the "Occ Acc Policy") with National Union Fire Insurance Company Of Pittsburgh, PA ("AIG"). The Debtors deduct the premium amounts for the Occ Acc Policy from the settlement checks paid to each of the Independent Contractors and make a monthly premium payment to AIG of approximately $200,000, normally in two (2) month arrears. As of the Petition Date, the Debtors owe approximately $600,000 to AIG on account of the Occ Acc Policy.

41.    The cancellation of the Occ Acc Policy would put the Debtors and the Independent Contractors at significant risk. Accordingly, the Debtors seek authority to continue to pay the premiums under the Occ Acc Policy in the ordinary course.

**H.   Employee Payroll Garnishments/Other Payroll Deductions**

42.   The Debtors deduct from their Employees' paychecks certain taxes, such as payroll and social security taxes, required to be withheld by certain federal, state, and local taxing authorities (the "Payroll Tax Obligations"). The Debtors forward certain of these withheld amounts, as well as the necessary employer contributions, to Unicorn HRO, which forwards the amounts to the appropriate governmental authorities, or alternatively makes direct payments to certain governmental authorities. By this Motion, the Debtors seek authority to forward any Payroll Tax Obligations not forwarded as of the Petition Date and to continue to withhold and forward any future Payroll Tax Obligations.

43.   Frequently, the Debtors are presented with garnishment or child support orders requiring the withholding of Employee wages to satisfy such obligations. Payments of these obligations are made from amounts otherwise payable to the Employees and are not an incremental cost obligation of the Debtors' estates. The Debtors seek authority to continue making such deductions and to pay over such amounts to third parties as requested or required in the ordinary course.

## RELIEF REQUESTED AND BASIS THERFOR

44.   To minimize the personal hardship the Employees will suffer in connection with the filing of these cases, the Debtors request entry of an order (i) authorizing (but not directing) the Debtors to pay, in their sole discretion, the Employee Obligations as described in this Motion and all costs incident thereto; (ii) authorizing (but not directing) the Debtors to continue to honor their practices, programs, and policies with respect to the Employees, as such practices, programs and policies were in effect as of the Petition Date, with authorization (but not direction) to pay the Employee Obligations that become due and owing during the pendency of these cases; and (iii) authorizing and directing Disbursement Banks (as defined below) to receive, process, honor, and pay all checks on account of Employee Obligations whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

45.     Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $10,950 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> > (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
> >
> > (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

46.     Likewise, under Section 507(a)(5) of the Bankruptcy Code, employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> > (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
> >
> > (B) for each such plan, to the extent of –
> >
> > > (i) the number of employees covered by each such plan multiplied by $10,950.00; less
> > >
> > > (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

47. The Debtors believe that the pre-petition Employee Obligations that they seek to pay are entitled to priority status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and do not exceed $10,950 for any individual Employee. The Debtors would therefore be required to pay these claims in full in order to confirm a Chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan). Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of the Employee Obligations to the extent that they constitute priority claims.

48. Additionally, the failure to pay Payroll Tax Obligations could result in tax liabilities and penalties for both the Employees and the Debtors, and potentially for the Debtors' directors and officers. Likewise, the failure to transmit garnishments and other similar deductions can cause hardship to certain Employees and an administrative burden for the Debtors. Indeed, if the Debtors were to be prohibited from transmitting such deductions, the Debtors would expect inquiries from garnishors regarding the Debtors' failure to submit, among other things, child support and alimony payments that are not the Debtors' property, but, rather, have been withheld from Employees' paychecks on such parties' behalf. Further, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit such payments.

49. Moreover, maintaining the Debtors' Workers' Compensation Policy is indisputably justified because applicable state law mandates this coverage. Furthermore, with respect to the Workers' Compensation Obligations, the risk that eligible claimants will not receive timely payments with respect to employment-related injuries could have a devastating effect on the financial well-being and morale of the Employees and their willingness to remain in the Debtors' employ.

50. Other than as described in this Motion, the Debtors do not by this Motion seek to alter their compensation, incentive, vacation, and other benefit policies at this time. This

Motion is intended only to permit the Debtors, in their discretion, to make payments consistent with those pre-petition policies to the extent that, without the benefit of an order approving this Motion, such payments would be inconsistent with the Bankruptcy Code.

51.     The Debtors submit that, consistent with Bankruptcy Rule 6003(b), immediate entry of an order approving payment of the Employee Obligations is necessary to avoid immediate and irreparable harm to the Debtors and their estates, in addition to the Employees. The vast majority of the Employees rely exclusively on their full compensation, benefits and reimbursement of their expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtors are not permitted to pay the unpaid Employee Obligations. The Debtors believe that if they are unable to honor such obligations, Employee morale and loyalty will be jeopardized at a time when such support is critical.

52.     Preservation and maximization of the value of the Debtors' estates depends upon a stable work force. Thus, any significant number of Employee departures or deterioration in morale at this time will substantially and adversely impact the Debtors' business operations and their Chapter 11 efforts and result in immediate and irreparable harm to the estates and their creditors. There is a real, immediate risk that if the Debtors are not authorized to continue to satisfy Employee Obligations in the ordinary course, Employees would no longer support and maintain the Debtors' operations, thereby jeopardizing the value of the Debtors' assets. Consequently, it is critical that the Debtors continue their ordinary course personnel policies, programs and procedures that were in effect prior to the Petition Date, except as otherwise set forth herein, for all of their Employees. Cause therefore exists for the Court to grant the relief requested herein immediately, as permitted by Bankruptcy Rule 6003.

53.     Courts in this District have approved the payment of pre-petition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate the Chapter 11 process.  *See, e.g.*, *In re ProxyMed Transaction Services, Inc*, Case No. 08-11551 (Bankr. D. Del. July 24, 2008) (BJS) (authorizing the payment of pre-petition wages, salaries and other compensation); *In re National Dry*

-14-

*Cleaners Inc.*, Case No. 08-11382 (Bankr. D. Del. July 7, 2008) (CSS) (same); *In re Powermate Holding Corp.*, Case No. 08-10498 (Bankr. D. Del. March 18, 2008) (KG) (same); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. January 23, 2008) (PJW); *In re Sea Containers Ltd.*, Case No. 06-11156 (Bankr. D. Del. October 17, 2006) (KJC) (same); *In re Pliant Corporation*, Case No. 06-10001 (Bankr. D. Del. January 31, 2006) (PJW) (same).

54. Authorization to pay any amounts under this Motion shall not be deemed to constitute post-petition assumption or adoption of any contract, program, or policy pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all their rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts under this Motion shall not affect the Debtors' right to contest the amount or validity of any Employee Obligations, including without limitation the Payroll Tax Obligations that may be due to any taxing authority.

55. Accordingly, as authorized by sections 363(b) and 105(a) of the Bankruptcy Code, the Debtors seek authority to pay the Employee Obligations that become due and owing during the pendency of these cases and to continue at this time their practices, programs, and policies with respect to the Employees, as such practices, programs, and policies were in effect as of the Petition Date. The Debtors submit that the relief requested herein is essential and critical to their ability to maximize value for their creditors.

## APPLICABLE BANKS SHOULD BE AUTHORIZED TO HONOR AND PAY CHECKS ISSUED AND MAKE OTHER TRANSFERS TO PAY THE PRE-PETITION EMPLOYEE OBLIGATIONS

56. The Debtors further request that the Court authorize and direct applicable banks and other financial institutions (collectively, the "Disbursement Banks") to honor and pay all pre-petition and post-petition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtors on account of the Employee Obligations that were not honored or paid as of the Petition Date. The Debtors also seek authority to issue new post-petition checks,

or effect new fund transfers, on account of the Employee Obligations to replace any pre-petition checks or fund transfer requests that may be dishonored or rejected.

57. As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Debtors' checks or other transfers on account of the Employee Obligations may be dishonored or rejected by the Disbursement Banks. The Debtors represent that each of these checks or transfers can be identified as relating directly to payment of the Employee Obligations. Accordingly, the Debtors believe that pre-petition checks and transfers other than those for Employee Obligations will not be honored inadvertently.

58. The Debtors hereby request that all Disbursement Banks be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related to the Employee Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

59. Finally, the Debtors request that, to the extent applicable, the stay provisions set forth in Bankruptcy Rule 6004(h) be waived and the relief requested herein be effective immediately.

## NOTICE

60. Notice of this Motion has been given to (i) the United States Trustee for this District, (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, and (iii) counsel to the agent for the Debtors' pre-petition secured lenders and proposed post-petition secured lenders. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

61.    The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors request entry of an Order, substantially in the form attached hereto as Exhibit "A," granting the relief requested herein and such other and further relief as is just and proper.

Dated: Wilmington, Delaware
           September 24, 2009

Respectfully submitted,

By:_____
RICHARDS, LAYTON & FINGER, P.A.
Russell C. Silberglied, Esq. (No. 3462)
Chun I. Jang, Esq. (No. 4790)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel:  (302) 651-7700
Fax: (302) 651-7701

-and-

LOWENSTEIN SANDLER PC
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Thomas A. Pitta, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel:  (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to Debtors
and Debtors In Possession*

## EXHIBIT A

| | |
|---|---|
| In re: | Chapter 11 |
| Velocity Express Corporation, et al., | Case No. 09-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 507(a)(4) AND 507(a)(5) (A) AUTHORIZING THE DEBTORS TO PAY PRE-PETITION WAGES, SALARIES, AND HONOR CERTAIN EMPLOYEE BENEFITS, (B) DIRECTING ALL BANKS TO HONOR PRE-PETITION CHECKS FOR PAYMENT OF PRE-PETITION EMPLOYEE OBLIGATIONS, AND (C) AUTHORIZING THE DEBTORS TO HONOR WORKERS' COMPENSATION OBLIGATIONS**

Upon the Debtors' Motion[2] for an Order Pursuant to 11 U.S.C. §§ 105(a), 507(a)(4) and 507(a)(5)(A) Authorizing the Debtors to Pay Pre-Petition Wages and Salaries, and Honor Certain Employee Benefits, (B) Directing All Banks to Honor Pre-Petition Checks for Payment of Pre-Petition Employee Obligations and (C) Authorizing the Debtors to Honor Workers' Compensation Obligations; and the Court finding that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; (iv) adequate notice of the Motion and the hearing thereon has been given and no other or further notice is necessary; and (v) upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein, it is hereby:

ORDERED that the Motion is granted; and it is further

---

[1] The following subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Velocity Express Corporation (5929): CD&L, Inc (0958); Clayton/National Courier Systems, Inc (6454); Click Messenger Service, Inc (6117); Olympic Courier Systems, Inc (3847); Securities Courier Corporation (0185); Silver Star Express, Inc (8303); U-Ship International, Ltd (3181); Velocity Express Leasing, Inc (6733); Velocity Express, Inc (4426); Velocity Systems Franchising Corporation (9687); VXP Leasing Mid-West, Inc (0846); and VXP Mid-West, Inc (0845)  The Debtors' principal address is One Morningside Drive North, Building B, Westport, CT 06880

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion

ORDERED that the Debtors are authorized, but not directed, to pay all outstanding wages, salaries and other compensation owed to Employees, the Temporary Employees and the Independent Contractors that arose prior to the Petition Date; and it is further

ORDERED that the Debtors are authorized, but not directed, to honor all liabilities to their Employees that arose under their vacation, sick leave personal leave and holiday policies prior to the Petition Date and to continue such policies post-petition; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay outstanding monies owing with respect to the Health Benefits and Insurance Benefits in an amount not to exceed $210,520 and to continue such benefits post-petition; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all pre-petition amounts owing with regards to Severance Protection; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay all pre-petition amounts owing with respect to the Retirement Plan in an amount not to exceed $38,000 and to continue such programs post-petition; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay outstanding monies owing with respect to the Employee Expense Obligations; and it is further

ORDERED that the Debtors are hereby authorized, but not directed, to pay outstanding monies owing with respect to Workers' Compensation Obligations and to continue their workers' compensation policies postpetition; and it is further

ORDERED that the Debtors are hereby authorized, but not directed, to pay outstanding monies owing with respect to Occ Acc Policy as they come due; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay any accrued and unpaid payroll taxes and continue to forward all postpetition payroll deductions to the appropriate parties; and it is further

ORDERED that, absent any further order of this Court, and provided that sufficient funds

-2-

are on deposit in the applicable accounts, the Debtors' banks and financial institutions are (i) authorized to honor pre-petition payroll and transfers on or after the Petition Date, and to the extent that any bank or financial institution may have honored any pre-petition payroll checks prior to the Petition Date, such honoring is ratified, (ii) authorized to process and honor all other checks and transfers issued for payments approved by this Order and/or reissue checks for any payments approved by this Order where such checks may be dishonored post-petition, and (iii) prohibited from placing holds on, or attempting to reverse, automatic transfers to Employee accounts for Employee Obligations; and it is further

ORDERED that the relief granted in this Order is subject to the statutory monetary caps set forth in 11 U.S.C. §§ 507(a)(4) and (a)(5); and it is further

ORDERED that nothing herein shall be deemed an assumption or adoption by the Debtors of any agreements or policies providing for pre-petition compensation or benefits to the Debtors' Employees; and it is further

ORDERED that nothing in this Order shall impair the Debtors' ability to contest the validity or amount of any Employee Obligations pursuant to any applicable law; and it is further

ORDERED, that all payments made or sought to be made pursuant to this Order shall be subject to the terms and conditions of the Postpetition Credit Agreement and the Budget (each as defined in the Debtors' motion to obtain postpetition financing); and it is further

ORDERED that this Court shall retain exclusive jurisdiction to hear and decide any and all disputes related to or arising from this Order; and it is further

ORDERED that this Order is effective immediately upon entry.

Dated: Wilmington, Delaware
       _____, 2009

                           _____
                           United States Bankruptcy Judge