IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Velocity Express Corporation, et al., | Case No. 09-_____ (___) |
| Debtors.1 | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING OF INSURANCE PREMIUMS THROUGH PREMIUM FINANCING SPECIALISTS AND FIRST INSURANCE FUNDING CORPORATION**

Velocity Express Corporation and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby seek the entry of an Order authorizing the Debtors to obtain Post-Petition Financing of Insurance Premiums through Premium Financing Specialists ("PFS") and First Insurance Funding Corporation ("FIFC"). In further support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are 11 U.S.C. § 521 and Rules 1007(c) and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

1 The following subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Velocity Express Corporation (5929): CD&L, Inc. (0958); Clayton/National Courier Systems, Inc. (6454); Click Messenger Service, Inc. (6117); Olympic Courier Systems, Inc. (3847); Securities Courier Corporation (0185); Silver Star Express, Inc. (8303); U-Ship International, Ltd. (3181); Velocity Express Leasing, Inc. (6733); Velocity Express, Inc. (4426); Velocity Systems Franchising Corporation (9687); VXP Leasing Mid-West, Inc. (0846); and VXP Mid-West, Inc. (0845). The Debtors' principal address is One Morningside Drive North, Building B, Westport, CT 06880.

3.    On September 24, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

4.    The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.    No request for appointment of a Chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

6.    The Debtors have one of the largest nationwide networks of time-definite logistics solutions in the United States and are a leading provider of distribution, scheduled and expedited logistics services.  They operate primarily in the United States with limited operations in Canada.

7.    On March 13, 2009, certain of the Debtors entered into a senior secured revolving credit agreement (as amended, the "Credit Agreement") with a syndicate of lenders led by Burdale Capital Finance, Inc. ("Burdale").  The Credit Agreement provides for up to $12.0 million of aggregate financing, $7.5 million of which may be in the form of letters of credit.  In addition, in connection with the acquisition of the CD&L portion of the Debtors' business, the Debtors issued certain senior secured notes (the "Senior Notes") and warrants.  As of the Petition Date, the Debtors owed approximately $103 million under the Senior Notes.

8.    The Debtors have been impacted by the significant downturn in the national economy over the past year.  Many of the Debtors' customers reduced their shipping expenses as their own sales decreased.  As a result, over the past 12 months, the Debtors' revenues had dropped by approximately 35%.  In addition, the Debtors are also party to approximately ten (10) class actions and have received several assessments from state

administrative agencies alleging that the Debtors improperly classified individuals as independent contractors rather than employees.

9.     The Debtors filed these cases to effectuate the balance sheet restructuring embodied in the sale of their assets to ComVest Velocity Acquisition I, LLC or a competing bidder. The Debtors believe that the reduced debt obligations resulting from this process will allow them to thrive going forward.

**RELIEF REQUESTED**

10.     In the ordinary course of the Debtors' business, the Debtors maintain four policies: (a) INSEL combined with non-owned and hired policies, (b) primary and excess director and officer, crime and fiduciary liability policies, which have zero balance due for the remainder of the term, (c) motor cargo, financial cargo, excess liability, excess auto liability and warehouse liability policies and (d) workers compensation, which are essential to the operation of their business (the "Policies"). The Policies are essential to the preservation of the Debtors' business, property and assets, and in many cases the coverage is required by various regulations and laws and the Debtors' Debtor-in-Possession Financing Facility.

11.     If the Debtors are unable to maintain the current Policies, they may be required to obtain replacement insurance on an expedited basis, and likely at an increased cost to the estates. Furthermore, any interruption of payments of the Policies may adversely affect the Debtors' ability to obtain insurance in the future and could leave the Debtors without sufficient insurance coverage.

12.     The INSEL combined with non-owned and hired policies (the "INSEL Policies") have a total annual premium of $3,534,935 (the "INSEL Premium") for the coverage period from December 31, 2008 through December 31, 2009 payable in 8 monthly installments. There was a mid-year adjustment reducing the annual premium which resulted in only two

installments of $208,120 due during the term. The interest charged by PFS on the INSEL Premium is $95,007. The Debtors have been unable to locate any source of unsecured premium financing. Accordingly, the Debtors seek to finance the INSEL Premium pursuant to a premium financing agreement ("INSEL PFA") with the third-party lender PFS.

13.     The motor cargo, financial cargo, excess liability, excess auto liability and warehouse liability policies (the "Auto Policies") have a total annual premium of $28,316 (the "Auto Premium") for the coverage period from December 31, 2008 through December 31, 2009 payable in 10 monthly installments. The finance charge for the financing of the Auto Policies is $17,930. The Debtors have been unable to locate any source of unsecured premium financing. Accordingly, the Debtors seek to finance the D&O Premium pursuant to a premium financing agreement ("Auto PFA") with a third-party lender, FIFC.

14.     The primary and excess director and officer, crime and fiduciary liability policies (the "Workers Compensation Policies") have a total annual premium of $914,779 (the "Workers Compensation Premium") for the coverage period from July 1, 2009 through June 30, 2010 payable in 7 monthly installments. The finance charge for the financing of the Workers Compensation Policies is $17,930. The Debtors have been unable to locate any source of unsecured premium financing. Accordingly, the Debtors seek to finance the Workers Compensation Premium pursuant to a premium financing agreement ("Workers Compensation PFA") with a third-party lender, FIFC.

15.     In view of the importance of maintaining the insurance coverage with respect to their business, the Debtors believe it is in the best interests of its estates to authorize the Debtors to enter into the INSEL PFA with PFS and the D&O PFA, Auto PFA and the Workers Compensation PFA with FIFC. Any other alternative would likely require considerable

cash expenditures, with no corresponding value to the Debtors. Copies of the proposed financing agreements are attached hereto as Exhibit A.

16. The Policies are extremely valuable and it is essential to maintain them in the interest of the preservation of the property, assets and business of the Debtors.

17. Pursuant to the terms of the PFAs, the INSEL Premium is to be financed through PFS and the D&O PFA, Auto PFA and the Workers Compensation PFA are to be financed through FIFC and each includes a Security Agreement which grants PFS and FIFC a secured interest in the gross unearned premiums which would be payable in the event of cancellation of the Policies and which further authorizes PFS and FIFC to cancel the Policies and obtain the return of any unearned premiums in the event of a default in the payment of any installment due.

18. In view of the importance of maintaining insurance coverage with respect to business activities and the preserving of the Debtors' cash flow by financing the insurance premiums, the Debtors believe that it would be in the best interest of the Debtors' estates and creditors to enter into the proposed PFAs.

## BASIS FOR RELIEF REQUESTED

19. Section 105(a) of the Bankruptcy Code provides the basis for the Court to grant authority to the Debtors to enter into the PFA. Section 105(a) states, in part, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. If the proposed PFAs are not authorized, the Debtors' restructuring efforts could be thwarted by the occurrence of a loss event that the Debtors are not insured against due to the lapse of coverage.

20. The Debtors believe that the payment of the sums due and coming due under the proposed PFAs are transactions in the ordinary course of business and, consequently,

would not require the Court's prior authorization. However, as the proposed PFAs grant PFS and FIFC a secured interest in the gross unearned premiums that would be payable in the event of cancellation of the Policies, Court approval is required under Bankruptcy Code section 364(c)(2). Section 364(c)(2) provides in relevant part that "if the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) . . . the court may authorize the obtaining of credit or the incurring of debt . . . secured by a junior lien on property of the estate that is not otherwise subject to a lien." Without the grant of a security interest in the unearned premiums, neither PFS nor FIFC will provide premium financing. The Debtors are unable to obtain unsecured financing of the Premium. Accordingly, if the Debtors are not allowed to enter into the proposed PFAs, the Policies would most likely lapse. In turn, this lapse of coverage would place the assets of the estate at risk.

21. Pursuant to Rule 6003 of the Bankruptcy Rules, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty (20) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.

22. As described above, the Debtors need these Policies to remain in place uninterrupted by the Chapter 11 Cases. Not only are some of these Policies required by various state and federal regulations, but, further, section 1112 of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.

23. The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

## NOTICE

24.    Notice of this Motion has been given to (i) the United States Trustee for this District, (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, and (iii) counsel to the agent for the Debtors' pre-petition secured lenders and proposed post-petition secured lenders.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

RLF1-3438548-1

**WHEREFORE**, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>, pursuant to Sections 105(a) and 364(c)(2) of the Bankruptcy Code, authorizing the Debtors to enter into the INSEL PFA with PFS and the Auto PFA and Workers Compensation PFA with FIFC, approving the terms thereof, including all rights and privileges granted PFS and FIFC therein, and authorizing PFS and FIFC to exercise all of their rights without first securing an Order of the Court, and granting such other and further relief as is just and proper.

Dated: Wilmington, Delaware
September 24, 2009

Respectfully submitted,

By: _Russell C. Silberglied_

**RICHARDS, LAYTON & FINGER, P.A.**
Russell C. Silberglied, Esq. (No. 3462)
Chun I. Jang, Esq. (No. 4790)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel: (302) 651-7700
Fax: (302) 651-7701

-and-

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Thomas A. Pitta, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to Debtors*
*and Debtors In Possession*

# EXHIBIT A

## [Copies of Proposed PFAs]



# First INSURANCE FUNDING CORP.

## COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

Quote Number: 000000743223

**INSURED/BORROWER (Name and address as shown on Policy)**
Velocity Express Corporation

One Morningside Dr
Ste. 300
Westport      CT    06880

Telephone Number:

Direct Correspondence to:

**AGENT or BROKER (Name and Business Address)**   **07390-0001**
Arthur J. Gallagher Risk Management/GEN

35 Waterview Blvd

Parsippany     NJ    07054

Telephone Number:   (973) 939-3600      F/D: 000

| | | | |
|---|---|---|---|
| A | Total Premium | $ | 371,504.80 |
| B | Cash Down Payment Required | $ | 92,876.20 |
| C | Unpaid Premium Balance | $ | 278,628.60 |
| D | Documentary Stamp Tax (only applicable in Florida) | $ | 0.00 |
| E | Amount Financed (The amount of credit provided on your behalf) | $ | 278,628.60 |
| F | **FINANCE CHARGE** (Dollar amount credit will cost you) | $ | 6,774.07 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ | 285,402.67 |

**ANNUAL PERCENTAGE RATE** (Cost of your credit figured as a yearly rate)    **7.250 %**

PAYMENT SCHEDULE BELOW or   ☐ See Schedule Attached

| Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|
| 7 | Beginning 02/28/2009 | 40,771.81 |

**LENDER**   **FIRST INSURANCE FUNDING CORP.**
450 Skokie Blvd, Suite 1000
P.O. Box 3306
Northbrook, IL 60065-3306
Telephone: (800) 837-3707
Fax: (800) 837-3709

**Prepayment** The Insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

**Security** As security for the payments to be made, the insured assigns FIRST INSURANCE FUNDING CORP. (herein referred to as "FIRST") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, FIRST HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

**Late Payment** A late charge will be imposed on any payment which is not received by FIRST within ten (10) days of its due date. This late charge will be 1.50% of the overdue amount, with a minimum of $25.00.

**Contract Reference** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

PRN:020409 CFG:Internal      RT:AJG-F CRD:0 BF:Bill P/F:2,167.72 SUB:FINCODEFAULT DOWN

## SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| 8211-3243 | 02084-001 - Federal Insurance Company 001773 - Risk Placement Services Inc | D&O [ME%: 0.000 CX: 10] | 12 | 01-30-2009 FIN TXS/FEES ERN TXS/FEES | 50,100.00 0.00 0.00 |
| 015404983 | 02361-041 - Illinois National Ins Co. 001773 - Risk Placement Services Inc | D&O [ME%: 0.000 CX: 10] | 12 | 01-30-2009 FIN TXS/FEES ERN TXS/FEES | 165,700.00 0.00 0.00 |
| | (Policies continued on next page.) | | | | |
| | | | | TOTAL PREMIUMS (Record in "A") | 371,504.80 |

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference and constitute a part of this agreement.

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties recited herein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, courts costs, and other collection costs incurred by FIRST in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify FIRST for any and all losses FIRST incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER by FIRST, the named insured (herein referred to as "Insured") promised to pay, to the order of FIRST, the Total of Payments subject to all of the provisions set forth on both pages of this agreement.

**NOTICE TO THE INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge. (4) Keep your copy of this agreement to protect your legal rights.

Name of Insured (Print or Type)

By: Signature

Title        Date

Signature of Agent or Broker

Title        Date

FIF NJ 1104

# SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| TBD | 12525-001 - Allied World Assurance (U S) 001773 - Risk Placement Services Inc | D&O [ME%: 0.000 CX: 10] | 12 | 01-30-2009 FIN TXS/FEES ERN TXS/FEES | 65,320.00 2,608.80 0.00 |
| 015406476 | 02361-041 - Illinois National Ins Co. 001773 - Risk Placement Services Inc | LIAB [ME%: 0.000 CX: 10] | 12 | 01-30-2009 FIN TXS/FEES ERN TXS/FEES | 14,542.00 0.00 0.00 |
| TBD | 02351-497 - National Union Fire of PA 001773 - Risk Placement Services Inc | CRME [ME%: 0.000 CX: 10] | 12 | 01-30-2009 FIN TXS/FEES ERN TXS/FEES | 73,234.00 0.00 0.00 |

**WARRANTY OF ACCURACY.** The Insured represents and warrants to FIRST that the insurance policies listed in the Schedule of Policies are in full force and effect and that the Insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The Insured further represents and warrants to FIRST that: (i) none of the insurance policies listed in the Schedule of Policies are for personal, family or household purposes, and (ii) the Insured has no indebtedness to the insurers issuing the listed policies, and none of those insurers have asserted any claims for payment against the Insured.

**REPRESENTATION OF SOLVENCY.** The Insured represents that the Insured is not insolvent nor presently the subject of any insolvency proceeding.

**COLLATERAL.** To secure payment of all amounts due under this agreement, Insured grants FIRST a security interest in the policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagee or loss payee interest.

**RIGHT TO CANCEL.** If Insured does not make a payment when it is due, or if Insured is otherwise in default under this agreement, FIRST may cancel the policies and act in Insured's place with regard to the policies, including endorsing any check or draft issued in the Insured's name for funds assigned to FIRST as security herein. This right given by Insured to FIRST constitutes a "Power of Attorney". Before FIRST cancels the policies, FIRST will provide notice to the Insured, as required by law. Insured agrees that this right to cancel which Insured has granted to FIRST cannot be revoked, and that FIRST's right to cancel will terminate only after all of Insured's indebtedness under this agreement is paid in full.

**DEFAULT.** Insured is in default under this agreement if, (a) a payment is not received by FIRST when it is due, (b) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor, (c) Insured fails to comply with any of the terms of this agreement, (d) insurance companies cancel coverages, (e) premiums increase under any policy listed in this agreement, and Insured fails to pay such increased premium within thirty (30) days of notification, or (f) Insured is in default under any other agreement with FIRST. Wherever the word "default" is used in this agreement, it means any one of the above. If the Insured is in default, FIRST has no further obligation under this agreement to pay premiums on the Insured's behalf, and FIRST may pursue any of the remedies provided in this agreement.

**LATE CHARGES.** A late charge will be imposed on any payment which is not received by FIRST within ten (10) days of its due date. This late charge will be 1.50% of the overdue amount, with a minimum of $25.00.

**DISHONORED CHECK FEE.** If an Insured's check is dishonored for any reason and if permitted by law, the Insured will pay FIRST a dishonored check fee equal to the maximum fee permitted by law.

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.** Once a Notice of Cancellation has been sent to any insurance company, FIRST has no duty to rescind it or to ask that the policy be reinstated, even if FIRST later receives Insured's payment. Payments which FIRST receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of FIRST's rights under this agreement.

**FIRST'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any policy is cancelled (whether by Insured or FIRST or anyone else) FIRST has the right to receive all unearned premiums and other funds assigned to FIRST as security herein and to apply them to Insured's unpaid balance under this agreement or any other agreement between the Insured and FIRST. If the amount received is more than the amount owed by Insured, any excess amount will be refunded to Insured. If the amount received is less than the amount owed by Insured, Insured will pay FIRST the balance due. FIRST may act in Insured's place to do whatever is necessary to collect such refunds. The insurance companies may rely on whatever FIRST tells them regarding the policies; it does not have to get any proof from the Insured or anyone else.

**INTEREST DUE AFTER CANCELLATION.** To the extent permitted by applicable law, if cancellation occurs, the Insured agrees to pay FIRST interest on the balance due at the contract rate or at the maximum rate allowed by applicable law, whichever is less, until the balance is paid in full or until such other date as provided by applicable law.

**RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL.** At any time after default, FIRST can demand and has the right to receive immediate payment of the total unpaid amount due under this agreement even if FIRST has not received any refund of unearned premium.

**CANCELLATION CHARGE.** If a default by the Insured results in cancellation of any insurance policy listed in the Schedule of Policies, the Insured will pay FIRST a charge equal to the maximum charge permitted by law.

**ASSIGNMENTS.** Insured may not assign any policy without FIRST's written consent. However, FIRST's consent is not needed to add mortgagees or other persons as loss payees. FIRST may transfer its rights under this agreement to anyone without the consent of Insured.

**COLLECTIONS AND ATTORNEY FEES.** FIRST may enforce its rights to collect amounts due to it without using the security interest granted in this agreement. If FIRST uses an attorney who is not a salaried employee of FIRST or incurs other collection costs to collect any money owed under this agreement, Insured agrees to pay reasonable attorney fees, court costs, and other collection costs incurred by FIRST.

**PREPAYMENT.** At any time, Insured may pay the entire amount still unpaid. If Insured pays the full unpaid amount before it is due, Insured will receive a refund of unearned Finance Charge computed by the actuarial method subject to a $10 non-refundable charge. There is no refund made if the amount to be refunded is less than $1.00.

**AUDIT AND REPORTING FORM POLICIES.** With regard to any policy in the Schedule of Policies, which is an auditable or reporting form type, Insured agrees to promptly pay to the insurance company the difference between the actual premium generated for the policy, and the premiums financed under this agreement.

**FINANCE CHARGE.** The finance charge begins on the earliest effective date of the policies listed in the Schedule of Policies section. The finance charge includes interest plus a non-refundable service fee equal to the maximum fee permitted by law.

**AGENT OR BROKER.** The agent or broker handling this agreement is not the agent or broker of FIRST, and cannot legally bind FIRST in any way. Where permissible by law, some portion of the finance charge may be paid by FIRST to the agent or broker executing this agreement as payment for the services in rendering the financing of the insurance premiums. Any and all questions about this payment should be directed to the agent or broker.

**CORRECTIONS.** FIRST may insert the names of the insurance companies and policy numbers, if these are not known at the time Insured signs this agreement. FIRST is authorized to correct patent errors or omissions in this agreement.

**EFFECTIVE DATE.** This agreement will not become effective until it is accepted in writing by FIRST.

**GOVERNING LAW.** This agreement is governed by and interpreted under the laws of the state where FIRST accepts this agreement. If any court finds any part of this agreement to be invalid, such finding shall not affect the remainder of this agreement. Singular words in this agreement shall mean plural and vice versa as may be required to give the agreement meaning.

**SIGNATURE AND ACKNOWLEDGMENT.** Insured has signed this agreement and received a copy of it. If Insured is a corporation, the person signing is an officer of that corporation authorized to sign this agreement. If the Insured is not a corporation, all Insureds listed in any policy have signed.
**LIABILITY.** Insured understands and agrees that FIRST has no liability to Insured or any person or entity upon the exercise of FIRST's right of cancellation, except in the event of willful or intentional misconduct by FIRST.

---

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

**SIGNATURES GENUINE.** To the best of our knowledge, the Insured's signature is genuine.
**AUTHORIZATION/RECOGNITION.** The Insured has authorized this transaction. Both the Insured and the Agent/Broker recognize the security interest granted herein, pursuant to which the Insured assigns to FIRST all unearned premiums, dividends and certain loss payments. Upon cancellation of any of the policies listed in the Schedule of Policies, the Agent/Broker agrees to immediately pay FIRST all unearned commissions and all unearned premiums, dividends and loss payments received. If such funds are not remitted to FIRST within 10 days of receipt by the Agent/Broker, the Agent/Broker agrees to pay FIRST interest on such funds at the maximum rate allowed by applicable law.
**POLICIES EFFECTIVE/PREMIUMS CORRECT.** The policies listed in the Schedule of Policies are in full force and effect, and the premiums are correct as listed.
**INSURED HAS THIS DOCUMENT.** The Insured has been given a copy of this agreement.
**NO INSOLVENCY.** To the best of our knowledge, neither the Insured nor the insurance companies are insolvent or involved in a bankruptcy or similar proceeding as debtor, except as clearly indicated on page 1 of this agreement.

FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a) No policies are Auditable, Reporting Form policies or policies subject to Retrospective Rating, except policies listed at right or as indicated on the Schedule of Policies.

(b) No policies are subject to Minimum Earned Premium except policies listed at right or as indicated on the Schedule of Policies. The Minimum Earned Premium for listed policies is $ _____

(c) All policies provide that unearned premiums are computed by the standard short rate or pro rata table, except those policies listed at right or as indicated on the Schedule of Policies.

(d) No policies contain provisions which prohibit cancellation either by the Insured or by the insurance company within ten (10) days, except those policies listed at right or as indicated on the Schedule of Policies.

**DEPOSIT/PROVISIONAL PREMIUMS.** Any Audit or Reporting Form policies or policies subject to retrospective rating included in this agreement are noted below in section (a). The deposit or provisional premiums for these policies are not less than the anticipated premiums to be earned for the full term of the policies.

**LOSS PAYEES NAMED.** Any policies which provide that the premium may be earned earlier in the event of loss are noted below in section (b) and/or (c). The Agent/Broker has notified the relevant insurance companies and the Insured that FIRST is to be named as a loss payee on such policies.

**AUTHORIZED ISSUING AGENT.** For the scheduled policies, the Agent/Broker is either the insurance company's authorized policy issuing agent or the broker placing the coverage directly with the insurance company, except where the name and address of Issuing Agent or General Agent is listed in the Schedule of Policies.

**AMOUNTS DUE FROM INSURED.** The cash down payment and any installments due from the Insured have been collected from the Insured.

| Policy Number Of Exceptions | Comments |
|---|---|
| (a) | |
| (b) | |
| (c) | |
| (d) | |

FIF NJ 1104

# Arthur J. Gallagher Brokerage & Risk Management Services, LLC
## Disclosure Letter

02/04/2009

Velocity Express Corporation

One Morningside Dr
Ste. 300
Westport, CT 06880

Re: Official Notice - Premium Finance Quote Number  743223

Arthur J. Gallagher Brokerage & Risk Management Services, LLC and its subsidiaries ("AJGRMS") will obtain premium financing quotes from one or more premium finance companies to finance your premium.  As compensation for referring your business to the premium finance company, AJGRMS will receive approximately    32.00%    of the Finance Charges and 50% of any collected Late Charges as described in the premium finance proposal. In obtaining these quotes, AJGRMS is representing the premium finance company, and is not acting as an insurance agent or broker on your behalf. Your acceptance of the Premium Finance Agreement constitutes your acknowledgement that you understand that AJGRMS represents the premium finance company and that you consent to AJGRMS receiving compensation in connection with this transaction.  Your acceptance also waives any potential conflict of interest that may arise from AJGRMS referring your business to a premium finance company for compensation.  You are under no obligation to select this offer and, should you prefer, you may independently arrange for your own premium financing.

Sincerely,

Arthur J. Gallagher Risk Management/GEN

35 Waterview Blvd

Parsippany, NJ 07054

V50249
Deposit needs to be vouched to
Gallagher, not to First Insurance

# First INSURANCE FUNDING CORP.

## COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

Quote Number: 000000849107

**INSURED/BORROWER (Name and address as shown on Policy)**
Velocity Express Corp

One Morningside Drive Ste 300

Westport                CT        06880

Telephone Number: (203) 349-4160

Direct Correspondence to:

**AGENT or BROKER (Name and Business Address)**   07390-0001
Arthur J. Gallagher Risk Management Svcs

35 Waterview Blvd

Parsippany                              07054

ACCOUNTS PAYABLE

JUL - 2 2009   F/D: 000

Telephone Number: (973) 939-3600

| | | |
|---|---|---|
| A | Total Premium | $ 914,779.00 |
| B | Cash Down Payment Required | $ 137,216.85 |
| C | Unpaid Premium Balance | $ 777,562.15 |
| D | Documentary Stamp Tax (only applicable in Florida) | $ 0.00 |
| E | Amount Financed (The amount of credit provided on your behalf) | $ 777,562.15 |
| F | FINANCE CHARGE (Dollar amount credit will cost you) | $ 17,930.25 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ 795,492.40 |
| | ANNUAL PERCENTAGE RATE (Cost of your credit figured as a yearly rate) | 5.000 % |

PAYMENT SCHEDULE BELOW, or ☐ See Schedule Attached

| Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|
| 10 | Beginning 08/01/2009 | 79,549.24 |

**LENDER    FIRST INSURANCE FUNDING CORP.**
450 Skokie Blvd, Suite 1000
P.O. Box 3306
Northbrook, IL 60065-3306
Telephone: (800) 837-3707
Fax:          (800) 837-3709

**Prepayment** The Insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

**Security** As security for the payments to be made, the insured assigns FIRST INSURANCE FUNDING CORP. (herein referred to as "FIRST") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, FIRST HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

**Late Payment** A late charge will be imposed on any payment which is not received by FIRST within ten (10) days of its due date. This late charge will be 1.50% of the overdue amount, with a minimum of $25.00.

**Contract Reference** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

PRN:062609 CFG:InternalAO

RT:AJG-F CRD:0 BP:Bill P/F:4,496.45 SUB:FINCODEFAULT DOWN

### SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| MWC11617300 | 00733-045 - Old Republic Insurance Co 003679 - ARTEX INSURANCE CO | WC [ME%: 0.000 CX: 10] [AU] | 12 | 07-01-2009 FIN TXS/FEES ERN TXS/FEES | 914,779.00 0.00 0.00 |

USMW1
142230 SPCD MW1

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference and constitute a part of this

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties recited herein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, courts costs, and other collection costs incurred by FIRST in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify FIRST for any and all losses FIRST incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

**INSURED'S AGRE**
In consideration of made to the abov (herein referred of Payments subj agreement.

**NOTICE TO THE I**
(1) Do not sign th you read both p contains blank s entitled to a com of this agreement you have the ri advance the full under certain con partial refund of t (4) Keep your cop to protect your leg

vouch this to Gallagher in NJ not to First Insurance funding

Mike

_____
Signature of Agent or Broker

_____          _____
Title                                            Date

FIF NJ 1104



*January*

# First INSURANCE FUNDING CORP.

**COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT**

Quote Number: 000000717664

**INSURED/BORROWER (Name and address as shown on Policy)**
Velocity Express Corporation

One Morningside Dr.
Ste 300
Westport     CT    06880

Telephone Number: (203) 226-7664

Direct Correspondence to:

**AGENT or BROKER (Name and Business Address)**    07890-0001
Arthur J. Gallagher Risk Management/GEN

35 Waterview Blvd

Parsippany     NJ    07054

Telephone Number: (973) 939-3600     F/D: 000

| | | | |
|---|---|---|---|
| A | Total Premium | $ | 1,016,463.92 |
| B | Cash Down Payment Required | $ | 203,292.80 |
| C | Unpaid Premium Balance | $ | 813,171.12 |
| D | Documentary Stamp Tax (only applicable in Florida) | $ | 0.00 |
| E | Amount Financed (The amount of credit provided on your behalf) | $ | 813,171.12 |
| F | FINANCE CHARGE (Dollar amount credit will cost you) | $ | 26,316.88 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ | 839,488.00 |
| | **ANNUAL PERCENTAGE RATE** (Cost of your credit figured as a yearly rate) | | 7.000 % |

PAYMENT SCHEDULE BELOW, or [ ] See Schedule Attached

| Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|
| 10 | Beginning 01/31/2009 | 83,948.80 |

**LENDER**    **FIRST INSURANCE FUNDING CORP.**
450 Skokie Blvd, Suite 1000
P.O. Box 3306
Northbrook, IL 60085-3306
Telephone: (800) 837-3707
Fax: (800) 837-3709

**Prepayment** The Insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

**Security** As security for the payments to be made, the Insured assigns FIRST INSURANCE FUNDING CORP. (herein referred to as "FIRST") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, FIRST HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

**Late Payment** A late charge will be imposed on any payment which is not received by FIRST within ten (10) days of its due date. This late charge will be 1.50% of the overdue amount, with a minimum of $25.00.

**Contract Reference** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

PRN:122208 CFG:Internal     RT:AJG-F CRD:0 BP:Bill P/F:8,260.05 SUB:FINCODEFAULT

## SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term In Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| 6632541 | 02084-001 - Federal Insurance Company | CRGO [ME%: 0.000 CX 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 219,500.00 0.00 0.00 |
| 6632542 | 02084-001 - Federal Insurance Company | PROP [ME%: 0.000 CX 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 5,000.00 0.00 0.00 |

*(handwritten: 2²/₃ %, 1422¹, .5%, 1422¹)*

(Policies continued on next page.)

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference and constitute a part of this agreement.

| TOTAL PREMIUMS (Record in "A") | 1,016,463.92 |
|---|---|

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties recited herein. Further, the undersigned agent or broker agrees to; (i) pay all reasonable attorney fees, courts costs, and other collection costs incurred by FIRST in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify FIRST for any and all losses FIRST incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER by FIRST, the named Insured (herein referred to as "Insured") promised to pay, to the order of FIRST, the Total of Payments subject to all of the provisions set forth on both pages of this agreement.
**NOTICE TO THE INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge.

Signature of Agent or Broker    *Gayle Slip*

Title    *VP*    Date    *1/5/08*

Name of Insured (Print or Type)    *Velocity Express Corporation*

By: Signature    *Med + Carlson*

Title    *Secretary*    Date    *12/29/8*

FIF NJ 1104

# SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium Is Paid | Type of Insurance | Policy Term In Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| EX000009064-04 | 03026-222 – Admiral Insurance Company 000689 – Risk Placement Services, Inc. | EXLB [ME%: 0.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 624,000.00 0.00 0.00 |
| CBBCN23667 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 18,044.53 0.00 0.00 |
| CBBCN23665 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 8,392.80 0.00 0.00 |
| CBBCN23670 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 18,044.53 0.00 0.00 |
| CBBCN23668 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 21,768.83 0.00 0.00 |
| CBBCN23666 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 9,987.44 0.00 0.00 |
| CBBCN23669 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 3,409.61 0.00 0.00 |
| CBBCN23671 | 85202-001 – Lloyds of London 001179 – E & S West Brokerage Services | CRGO [ME%: 25.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 41,476.18 0.00 0.00 |
| NXG4094388 | 00846-001 – General Star National Ins Co 000689 – Risk Placement Services, Inc. | AUTO [ME%: 0.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 21,840.00 0.00 0.00 |
| 6832455 | 02084-001 – Federal Insurance Company | LIAB [ME%: 0.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 15,000.00 0.00 0.00 |
| 6842105 | 02084-001 – Federal Insurance Company | LIAB [ME%: 0.000 CX: 10] | 12 | 12-31-2008 FIN TXS/FEES ERN TXS/FEES | 10,000.00 0.00 0.00 |

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT:

**WARRANTY OF ACCURACY.** The Insured represents and warrants to FIRST that the insurance policies listed in the Schedule of Policies are in full force and effect and that the Insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The Insured further represents and warrants to FIRST that: (i) none of the insurance policies listed in the Schedule of Policies are for personal, family or household purposes, and (ii) the Insured has no indebtedness to the insurers issuing the policies listed, and none of those insurers have asserted any claims for payment against the Insured.

**REPRESENTATION OF SOLVENCY.** The Insured represents that the Insured is not insolvent nor presently the subject of any insolvency proceeding.

**COLLATERAL.** To secure payment of all amounts due under this agreement, Insured grants FIRST a security interest in the policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagee or loss payee interest.

**RIGHT TO CANCEL.** If Insured does not make a payment when it is due, or if Insured is otherwise in default under this agreement, FIRST may cancel the policies and act in Insured's place with regard to the policies, including endorsing any check or draft issued in the Insured's name for funds assigned to FIRST as security herein. This right given by Insured to FIRST constitutes a "Power of Attorney". Before FIRST cancels the policies, FIRST will provide notice to the Insured, as required by law. Insured agrees that this right to cancel which Insured has granted to FIRST cannot be revoked, and that FIRST's right to cancel will terminate only after all of Insured's indebtedness under this agreement is paid in full.

**DEFAULT.** Insured is in default under this agreement if, (a) a payment is not received by FIRST when it is due, (b) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor, (c) Insured fails to comply with any of the terms of this agreement, (d) Insurance companies cancel coverages, (e) premiums increase under any policy listed in this agreement, and Insured fails to pay such increased premium within thirty (30) days of notification, or (f) Insured is in default under any other agreement with FIRST. Wherever the word "default" is used in this agreement, it means any one of the above. If the Insured is in default, FIRST has no further obligation under this agreement to pay premiums on the Insured's behalf, and FIRST may pursue any of the remedies provided in this agreement.

**LATE CHARGES.** A late charge will be imposed on any payment which is not received by FIRST within ten (10) days of its due date. This late charge will be 1.50% of the overdue amount, with a minimum of $25.00.

**DISHONORED CHECK FEE.** If an Insured's check is dishonored for any reason and if permitted by law, the Insured will pay FIRST a dishonored check fee equal to the maximum fee permitted by law.

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.** Once a Notice of Cancellation has been sent to any insurance company, FIRST has no duty to rescind it or to ask that the policy be reinstated, even if FIRST later receives Insured's payment. Payments which FIRST receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of FIRST's rights under this agreement.

**FIRST'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any policy is cancelled (whether by Insured or FIRST or anyone else) FIRST has the right to receive all unearned premiums and other funds assigned to FIRST as security herein and to apply them to Insured's unpaid balance under this agreement, or any other agreement between the Insured and FIRST. If the amount received is more than the amount owed by Insured, any excess amount will be refunded to Insured. If the amount received is less than the amount owed by Insured, Insured will pay FIRST the balance due. FIRST may act in Insured's place to do whatever is necessary to collect such refunds. The insurance companies may rely on whatever FIRST tells them regarding the policies; it does not have to get any proof from the Insured or anyone else.

**INTEREST DUE AFTER CANCELLATION.** To the extent permitted by applicable law, if cancellation occurs, the Insured agrees to pay FIRST interest on the balance due at the contract rate or at the maximum rate allowed by applicable law, whichever is less, until the balance is paid in full or until such other date as provided by applicable law.

**RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL.** At any time after default, FIRST can demand and has the right to receive immediate payment of the total unpaid amount due under this agreement even if FIRST has not received any refund of unearned premium.

**CANCELLATION CHARGE.** If a default by the Insured results in cancellation of any insurance policy listed in the Schedule of Policies, the Insured will pay FIRST a charge equal to the maximum charge permitted by law.

**ASSIGNMENTS.** Insured may not assign any policy without FIRST's written consent. However, FIRST's consent is not needed to add mortgagees or other persons as loss payees. FIRST may transfer its rights under this agreement to anyone without the consent of Insured.

**COLLECTIONS AND ATTORNEY FEES.** FIRST may enforce its rights to collect amounts due to it without using the security interest granted in this agreement. If FIRST uses an attorney who is not a salaried employee of FIRST or incurs other collection costs to collect any money owed under this agreement, Insured agrees to pay reasonable attorney fees, court costs, and other collection costs incurred by FIRST.

**PREPAYMENT.** At any time, Insured may pay the entire amount still unpaid. If Insured pays the full unpaid amount before it is due, Insured will receive a refund of unearned Finance Charge computed by the actuarial method subject to a $10 non-refundable charge. There is no refund made if the amount to be refunded is less than $1.00.

**AUDIT AND REPORTING FORM POLICIES.** With regard to any policy in the Schedule of Policies, which is an auditable or reporting form type, Insured agrees to promptly pay to the insurance company the difference between the actual earned premium generated for the policy, and the premiums financed under this agreement.

**FINANCE CHARGE.** The finance charge begins on the earliest effective date of the policies listed in the Schedule of Policies section. The finance charge includes interest plus a non-refundable service fee equal to the maximum fee permitted by law.

**AGENT OR BROKER.** The agent or broker handling this agreement is not the agent or broker of FIRST, and cannot legally bind FIRST in any way. Where permissible by law, some portion of the finance charge may be paid by FIRST to the agent or broker executing this agreement as payment for the services in rendering the financing of the insurance premiums. Any and all questions about this payment should be directed to the agent or broker.

**CORRECTIONS.** FIRST may insert the names of the insurance companies and policy numbers, if these are not known at the time Insured signs this agreement. FIRST is authorized to correct patent errors or omissions in this agreement.

**EFFECTIVE DATE.** This agreement will not become effective until it is accepted in writing by FIRST.

**GOVERNING LAW.** This agreement is governed by and interpreted under the laws of the state where FIRST accepts this agreement. If any court finds any part of this agreement to be invalid, such finding shall not affect the remainder of this agreement. Singular words in this agreement shall mean plural and vice versa as may be required to give the agreement meaning.

**SIGNATURE AND ACKNOWLEDGEMENT.** Insured has signed this agreement and received a copy of it. If Insured is a corporation, the person signing is an officer of that corporation authorized to sign this agreement. If the Insured is not a corporation, all Insureds listed in any policy have signed.
**LIABILITY.** Insured understands and agrees that FIRST has no liability to Insured or any person or entity upon the exercise of FIRST's right of cancellation, except in the event of willful or intentional misconduct by FIRST.

---

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

**SIGNATURES GENUINE.** To the best of our knowledge, the Insured's signature is genuine.

**AUTHORIZATION/RECOGNITION.** The Insured has authorized this transaction. Both the Insured and the Agent/Broker recognize the security interest granted herein, pursuant to which the Insured assigns to FIRST all unearned premium, dividends and certain loss payments. Upon cancellation of any of the policies listed in the Schedule of Policies, the Agent/Broker agrees to immediately pay FIRST all unearned commissions and all unearned premiums, dividends and loss payments received. If such funds are not remitted to FIRST within 10 days of receipt by the Agent/Broker, the Agent/Broker agrees to pay FIRST interest on such funds at the maximum rate allowed by applicable law.
**POLICIES EFFECTIVE/PREMIUMS CORRECT.** The policies listed in the Schedule of Policies are in full force and effect, and the premiums are correct as listed.
**INSURED HAS THIS DOCUMENT.** The Insured has been given a copy of this agreement.
**NO INSOLVENCY.** To the best of our knowledge, neither the Insured nor the insurance companies are insolvent or involved in a bankruptcy or similar proceeding as debtor, except as clearly indicated on page 1 of this agreement.

FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a) No policies are Auditable, Reporting Form policies or policies subject to Retrospective Rating, except policies listed at right or as indicated on the Schedule of Policies.

(b) No policies are subject to Minimum Earned Premium except policies listed at right or as indicated on the Schedule of Policies. The Minimum Earned Premium for listed policies is $ _____

(c) All policies provide that unearned premiums are computed by the standard short rate or pro rata table, except those policies listed at right or indicated on the Schedule of Policies.

(d) No policies contain provisions which prohibit cancellation either by the Insured or by the insurance company within ten (10) days, except those policies listed at right or as indicated on the Schedule of Policies.

**DEPOSIT/PROVISIONAL PREMIUMS.** Any Audit or Reporting Form policies or policies subject to retrospective rating included in this agreement are noted below in section (a). The deposit or provisional premiums for these policies are not less than the anticipated premiums to be earned for the full term of the policies.

**LOSS PAYEES NAMED.** Any policies which provide that the premium may be earned earlier in the event of loss are noted below in section (b) and/or (c). The Agent/Broker has notified the relevant insurance companies and the Insured that FIRST is to be named as a loss payee on any such policies.

**AUTHORIZED ISSUING AGENT.** For the scheduled policies, the Agent/Broker is either the insurance company's authorized policy issuing agent or the broker placing the coverage directly with the insurance company, except where the name and address of issuing Agent or General Agent is listed in the Schedule of Policies.

**AMOUNTS DUE FROM INSURED.** The cash down payment and any installments due from the Insured have been collected from the Insured.

| Policy Number Of Exceptions | Comments |
|---|---|
| (a) | |
| (b) | |
| (c) | |
| (d) | |

FIF NJ 1104



*DP K1'*
*14*
*D 30*
*35*

**Premium Financing Specialists, Inc.**

P O BOX 419090
KANSAS CITY, MO 64141-6090
(816)942-6336 FAX: (816)942-7352

A MISSOURI CORPORATION, HOME OFFICE, KANSAS CITY, MISSOURI
PREMIUM FINANCE AGREEMENT

| | | | AGENT (Name & Place of business) | INSURED (Name and residence or business) |
|---|---|---|---|---|
| **A** | CASH PRICE (TOTAL PREMIUMS) | $3,534,935.50 | ARTHUR J GALLAGHER RISK MANAGEMENT SERVICES, INC. | VELOCITY EXPRESS CORPORATION |
| **B** | CASH DOWN PAYMENT | $892,374.00 | 2345 GRAND BLVD STE 800 | ONE MORNINGSIDE DRIVE SUITE 300 |
| **C** | PRINCIPAL BALANCE (A MINUS B) | $2,642,561.50 | KANSAS CITY          MO  64108-2641 (816)395-8536 | WESTPORT          CT  06880 |

Quote Number: 17028

## LOAN DISCLOSURE

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 9.5 % | $95,007.30 | $2,642,561.50 | $2,737,568.80 |

**YOUR PAYMENT SCHEDULE WILL BE**

ITEMIZATION OF THE AMOUNT FINANCED; THE FULL AMOUNT FINANCED WAS PAID TO THE INSURANCE COMPANY.

| Number of Payments | Amount of Payments | When Payments Are Due Beginning: | MONTHLY 1/31/2009 |
|---|---|---|---|
| 8 | $342,196.10 | | |

**Security:** You are giving a security interest in the unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium of the policies.

**Late Charges:** A late charge will be imposed on any installment in default 5 days or more. This late charge will be 5% of the installment due.

**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge in accordance with Rule of 78's. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $10.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL TERMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 12/31/2008 | NEW HAMPSHIRE INSURANCE CO  *Auto* | AUTO | 12  *3% 29%* | $1,016,053.00 |
| | | *1/22/01* | | | |
| PENDING | 12/31/2008 | NEW HAMPSHIRE INSURANCE CO  *Insec* | AUTO | 12  *69%* | $2,450,691.00 |
| | | *142710* | | | |

Continued On Schedule A

(CHECK CORRECT BOX)   ☐ PERSONAL   ☑ COMMERCIAL

| TOTAL $ | $3,534,935.50 |
|---|---|

The undersigned insured directs Premium Financing Specialists, Inc. (herein, "Lender") to pay the premiums on the policies described above. In consideration of such premium payments the insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender the amount stated as Total of Payments in accordance with the Payment Schedule, both as shown in Loan Disclosure, subject to the Provisions herein set forth.

The named Insured:

1. Assigns to Lender as security for the total amount payable hereunder all unearned premiums and, on commercial policies, loss payments which will reduce the unearned premium which become payable under the policies listed above, as to all of which insured gives to Lender a security interest.

2. Irrevocably appoints Lender attorney-in-fact of the insured with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this agreement.

3. Understands that the finance charge begins to accrue as of the earliest policy effective date.

(10/07) Copyright 1988 Premium Financing Specialists, Inc.

4. Agrees to all provisions set out on pages 1 and 2 of this agreement.

NOTICE:

A. Do not sign this agreement before you read it or if it contains any blank space.

B. You are entitled to a completely filled in copy of this agreement.

C. Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge.

D. Keep your copy of this agreement to protect your legal rights.

_____     _____
Signature of Insured or Authorized Agent          DATE

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_____     _____
SIGNATURE OF AGENT          DATE

Page 1 of 2          12/19/08          PLUS - CTCPUR

## FURTHER PROVISIONS OF PREMIUM FINANCE AGREEMENT

Insured and Lender agree that:

**5. EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the Insured by Lender.

**6. DELINQUENT PAYMENTS:** The acceptance by Lender of one or more late payments from the Insured shall not estop Lender or be a waiver of the the rights of Lender to exercise all of its rights hereunder in the event of any subsequent late payment.

**7. CANCELLATION:** Lender may cancel the insurance policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the Insured does not pay any installment according to the terms of this Agreement and the unpaid balance due to Lender shall be immediately payable by the Insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender.

**8. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the Insured will pay Lender a cancellation charge of $15, if permitted, up to the limit specified by law. If cancellation occurs, the Insured agrees to pay a finance charge on the balance due at the contract rate of interest until the balance is paid in full or until such other dates as required by law. (Not applicable in KY, NV, and VT)

**9. INSUFFICIENT FUNDS (NSF) CHARGES:** If an Insured's check or electronic funding is dishonored for any reason, the Insured will pay to Lender a fee, if permitted by law, of $20 or the maximum permitted by law. (Not applicable in AL and KY)

**10. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender' Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the Insured's account without any obligation on the part of Lender to request reinstatement of the policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled the money. In the event that Lender does request a reinstatement of the policy on behalf of the Insured, such a request does not guarantee that coverage under the policy will be reinstated or continued. Only the insurance company has authority to reinstate the policy. The Insured agrees that Lender has no liability to the Insured if the policy is not reinstated.

**11. ASSIGNMENT:** The Insured agrees not to assign any policy listed hereon or any interest therein except for the interest of mortgages or loss payees, without the written consent of Lender, that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the Insured, and that all agreements made by the Insured hereunder and all rights and benefits conferred upon Lender shall insure to the benefit of Lender's successors and assigns (and any assignees thereof).

**12. INSURANCE AGENT OR BROKER:** The Insured agrees that: the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor is to make representations, orally or in writing, to the Insured on Lender' behalf (except to the extent expressly required by applicable law). The agent or broker executing this agreement has a financial interest in the premium finance company that you have contracted with and as a result may receive financial benefit from arranging the financing of your insurance premium. If you have any questions about the benefits the agent/broker receive you should contact the agent/broker.

**13. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance.

**14. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law, if this Agreement is referred to an attorney, who is not a salaried employee of Lender, to collect any money Insured owes under this Agreement. (Not applicable in KY or MD)

**15. LIMITATION OF LIABILITY:** The Insured agrees that Lender's liability to the Insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligent or willful misconduct. (Not applicable in KY)

**16. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the Insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**17. REPRESENTATIONS AND WARRANTIES:** The Insured represents that the Insured is not insolvent or presently the subject of any insolvency proceeding (or if the Insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), if the Insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the Insured, and all parties responsible for payment of the premium are named and have signed this Agreement.

**18. ENTIRE DOCUMENT:** This document is the entire Agreement between Lender and the Insured and can only be changed in writing and signed by both parties except that the Insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the Insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. The laws of the state indicated in the Insured's address on the Agreement will govern this Agreement.

## AGENT'S REPRESENTATION

The agent/broker executing this agreement represents, warrants and agrees: (1) the Insured has received a copy of this Agreement and has authorized this transaction, the Insured's signature is genuine, and the down payment has been received from the Insured in cash, (2) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (3) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (4) the policies can be cancelled by the Insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (5) there are no bankruptcy, receivership, or insolvency proceedings affecting the Insured, (6) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent in preparing this agreement, and (7) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable) (8) to hold in trust for Lender any payments made or credited to the Insured through or to you directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender upon demand to satisfy the outstanding indebtness of the Insured.

| AGENT | INSURED |
|---|---|
| ARTHUR J GALLAGHER RISK | VELOCITY EXPRESS CORPORATION |
| MANAGEMENT SERVICES, INC. | |
| 2345 GRAND BLVD | ONE MORNINGSIDE DRIVE |
| STE 800 | SUITE 300 |
| KANSAS CITY    MO   64108-2641 | WESTPORT      CT  06880 |
| (816)395-8536 | |

## SCHEDULE A

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | POL TRMS | PREMIUM |
|---|---|---|---|---|---|
| PENDING | 1/1/2009 | LEXINGTON INSURANCE CO | LIAB | 12 | $65,000.00 |
| | | | FEES | | $39.00 |
| | | | TAXES | | $3,152.50 |

| PAYMENT REVISION LETTER | |
| --- | --- |
| REFER TO THIS ACCOUNT NO. IN ALL CORRESPONDENCE | ACCOUNT NUMBER |
| | **NAK-86209** |

IF YOU HAVE ANY QUESTIONS, PLEASE CALL: (800)255-6316

**DATE MAILED:** 08/24/09

**INSURED**
VELOCITY EXPRESS CORPORATION
ONE MORNINGSIDE DRIVE
SUITE 300
WESTPORT, CT 06880-3847

002374

**AGENT**
ARTHUR J GALLAGHER RISK
MANAGEMENT SERVICES, INC.
2345 GRAND BLVD
STE 800
KANSAS CITY, MO 64108-2641

RECEIVED

AUG 2 6 2009

Accounting Payable

Recently, for one of the following reasons, PFS received instructions to alter your payment schedule.

1). Your insurance agent sent us a request to provide additional financing for insurance premiums on your existing account. We have added these premiums to your account and revised your payments accordingly. You should receive a new Notice of Acceptance reflecting the revised premium amount and payment schedule. Included with this letter or under a separate cover letter you should also receive revised payment coupons. Please use the new coupons for all of your future payments.

2). PFS received return premium funds that have been applied to your account and revised your payments accordingly. Included with this letter or under a separate cover letter you should receive revised payment coupons. Please use the new coupons for all of your future payments.

If you have any questions, please feel free to contact either your insurance agent or PFS.

# EXHIBIT B

**[Proposed Order]**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Velocity Express Corporation, et al., | Case No. 09-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

### ORDER AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION FINANCING OF INSURANCE PREMIUMS THROUGH PREMIUM FINANCING SPECIALIST AND FIRST INSURANCE FUNDING CORPORATION

Upon Debtors' Motion seeking the entry of an Order authorizing the Debtors to enter into Premium Finance Agreements (the "PFAs") with Premium Financing Specialist and ("PFS") and First Insurance Funding Corporation ("FIFC") pursuant to 11 U.S.C. §§ 105(a) and 364(c)(2) (the "Motion"); and the Court finding that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; (iv) proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and (v) upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein, it is hereby

ORDERED that the Motion is granted; and it is further

ORDERED, pursuant to 11 U.S.C. § 364(c)(2), that the Debtors are hereby authorized to enter into the PFAs with PFS and FIFC, copies of which are annexed to the Motion

---

[1] The following subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Velocity Express Corporation (5929): CD&L, Inc. (0958); Clayton/National Courier Systems, Inc. (6454); Click Messenger Service, Inc. (6117); Olympic Courier Systems, Inc. (3847); Securities Courier Corporation (0185); Silver Star Express, Inc. (8303); U-Ship International, Ltd. (3181); Velocity Express Leasing, Inc. (6733); Velocity Express, Inc. (4426); Velocity Systems Franchising Corporation (9687); VXP Leasing Mid-West, Inc. (0846); and VXP Mid-West, Inc. (0845).   The Debtors' principal address is One Morningside Drive North, Building B, Westport, CT 06880.

and made a part hereof, and each Insurance Carrier is granted a first priority security interest as described in the PFAs; and it is further

ORDERED that the Debtors are directed to pay the Insurance Carriers all sums due pursuant to the PFA, in the ordinary course of business, without the need for further authority or approval from this Court; and it is further

ORDERED that the Debtors are authorized and directed to execute and deliver such documents and amendments to the PFAs as Debtors may deem necessary or desirable to carry out this Order; and it is further

ORDERED that the reversal or modification on appeal of the authorization under this Order shall not affect the validity of the debt, priority, or lien granted to PFS and FIFC under this Order as provided by Section 364(e) of the Bankruptcy Code; and it is further

ORDERED that upon occurrence of a default by the Debtors under the terms and conditions of the PFAs and applicable law, no action shall be taken to hinder, impede, or delay exercise by Premium Financing Specialists and FIFC of their rights and remedies under the PFA and applicable law, including but not limited to an action under the Bankruptcy Code or otherwise to enjoin exercise of PFS and FIFC's rights; and it is further

ORDERED that Bankruptcy Rule 6003 has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors; and it is further

ORDERED that this Order shall be binding on the Debtors and their estates, and all successors and assigns of the Debtors and their estates, including but not limited to any trustee appointed in the Debtors' bankruptcy cases under Chapter 7 or Chapter 11 of the Bankruptcy Code. PFS's and FIFC's rights under the PFAs and applicable state law shall not be impaired by these bankruptcy proceedings, the appointment of a trustee, the conversion of these proceedings to one

2

under Chapter 7 of the Bankruptcy Code, or any other provisions of the Bankruptcy Code; and it is further

ORDERED that notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

Dated: Wilmington, Delaware
_____, 2009

_____
United States Bankruptcy Judge