# EXHIBIT B

{NY077621;1}NY077621;1
09/25/2009 12529390.4
RLF1-3438866-1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Velocity Express Corporation, *et al.*, | Case No. 09-13294 (MFW) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Re: Docket No. ___** |

### ORDER PURSUANT 11 U.S.C. §§ 105(a), 363 AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion (the "Motion"),[2] of the above-captioned debtors (the "Debtors"

or "Seller"), as debtors and debtors in possession, each of which commenced a case under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September [ ], 2009

(the "Petition Date"), seeking entry of an order pursuant to sections 105, 363 and 365 of the

Bankruptcy Code and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), (I)(A) authorizing and scheduling an auction (the "Auction") at which

the Debtors will solicit higher and better offers in connection with the sale of certain assets,

(B) approving the bidding procedures (the "Bid Procedures") for such assets, (C) approving the

break-up fee and expense reimbursement and (D) approving the form and scope of notice of the

---

[1] The following subsidiaries and affiliates (including the last four digits of their respective taxpayer identification numbers) have filed petitions for relief under chapter 11 concurrently with Velocity Express Corporation (5929); CD&L, Inc. (0958); Clayton/National Courier Systems, Inc. (6454); Click Messenger Service, Inc. (6117); Olympic Courier Systems, Inc. (3847); Securities Courier Corporation (0185); Silver Star Express, Inc. (8303); U-Ship International, Ltd. (3181); Velocity Express Leasing, Inc. (6733); Velocity Express, Inc. (4426); Velocity Systems Franchising Corporation (9687); VXP Leasing Mid-West, Inc. (0846); and VXP Mid-West, Inc. (0845). The Debtors' principal address is One Morningside Drive North, Building B, Westport, CT 06880.

[2] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion or the APA (as defined below).

Bid Procedures and Auction; and (II) approving the sale of the assets free and clear of all liens, claims and encumbrances; (III) approving procedures for assumption and assignment of certain executory contracts and unexpired leases; and (IV) granting related relief as requested therein; and the Court having entered an order on September __, 2009 approving the Bid Procedures [Docket No. ___] (the "Bid Procedures Order"); and the Auction having been held on _____ __, 2009 for the consideration of Qualified Bids and the selection of Successful Bidder(s) (each as defined in the Bid Procedures Order); and the Debtors, in consultation with the Creditors Committee, the Post-Petition Lenders and the Secured Lenders, having selected the Purchaser as the Successful Bidder; and the Debtors and Purchaser having entered into that certain Asset Purchase and Sale Agreement dated as of September __, 2009 (as modified, clarified, or amended pursuant to its terms and in accordance with this Order, the "APA");[3] and upon the Court's consideration of the Motion and the record of the hearing held on _____ ___, 2009 with respect to the Motion including without limitation the testimony proffered therein (the "Sale Hearing"); and it appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon, and sufficient and good cause appearing therefor,

THE COURT HEREBY FINDS AND DETERMINES THAT:[4]

A.    **Jurisdiction and Venue**.   This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these chapter 11 cases (the "Cases") and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3] A copy of the APA was attached as Exhibit A to the Notice of Successful Bidder and Sale Hearing filed with the Court on October ___, 2009 [Docket No. _____].

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

B.     **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014, and the applicable Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

C.     **Final Order**. This order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014, Rule 54(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054, and any other applicable rule or law, the Court expressly finds that there is no just reason for the delay in the implementation of this Order, waives any stay, and expressly directs entry of the order as set forth herein.

D.     **Notice**. As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing and as approved under the Bid Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Motion, Auction, the Sale Hearing, and the transactions contemplated by the APA (the "Sale"), including the assumption and assignment of the Assigned Contracts and the Cure Amounts (as defined below) with respect thereto, has been provided; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of the Cases; and (iv) no other or further notice of the Motion, the Auction, the Sale Hearing or the Sale (including the assumption and assignment of the Assigned Contracts and the Cure Amounts with respect thereto), is or shall be required. The disclosures made by the Debtors concerning the Motion, Auction, the Sale, the Sale Hearing, the APA, and the assumption and assignment of the Assigned Contracts to the Purchaser, and the Cure Amounts with respect to the Assigned Contracts, were reasonable, adequate and complete.

E. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Motion and the relief requested therein (including the assumption and assignment of the Assigned Contracts and the Cure Amounts with respect to the Assigned Contracts) has been given to all interested persons and entities, including, without limitation, the following: (i) counsel to any Creditors Committee; (ii) counsel for the Post-petition Lender; (iii) the Office of the United States Trustee; (iv) all entities known by the Debtors to have asserted any Lien, Claim, Encumbrance or Interest (as defined below) on the Purchased Assets; (v) all parties entitled to receive notice in the Cases pursuant to Bankruptcy Rule 2002; (vi) all parties who have expressed an interest in the Purchased Assets over the past six (6) months; (vii) all counterparties to the Assigned Contracts, and (viii) the Internal Revenue Service and all state/local taxing authorities in jurisdictions where the Seller has or may have any tax liability.

F. **Auction**. The Auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any Qualified Bidder to submit bids and participate in the Auction. The Auction was conducted properly and in good faith, without collusion and in accordance with the Bid Procedures Order. The Purchaser was a Qualified Bidder pursuant to the Bid Procedures Order. At the Auction, after consideration of all reasonable alternatives and in consultation with the Creditors Committee, Post-petition Lenders, and the Secured Lenders, the Debtors selected Purchaser as the Successful Bidder. The APA constitutes the highest and best offer for the Purchased Assets and Assumed Liabilities and will provide a greater recovery for the Debtors' estates than would be provided by any other known available alternative. The Debtors' determination that the APA constitutes the highest and best

offer for the Purchased Assets and Assumed Liabilities constitutes a valid and sound exercise of the Debtors' business judgment.

G. **Arm's-Length Sale**. The APA was negotiated, proposed and entered into by the Seller and the Purchaser without collusion in good faith and from arm's-length bargaining positions. Neither the Purchaser nor any of its Affiliates or their respective Representatives is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and no common identify of directors or controlling shareholders exists between the Purchaser and any of the Debtors. Neither the Debtors, nor the Purchaser, nor any of their respective Representatives have engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Specifically, neither Purchaser nor any of its Representatives have acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. The terms and conditions of the APA and the transactions contemplated thereby (including without limitation the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

H. **Good Faith Purchaser**. The Purchaser is purchasing the Purchased Assets and is assuming the Assumed Liabilities in good faith and is a good faith Purchaser of the Purchased Assets within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by that provision. The Purchaser and its Representatives have proceeded in good faith and without collusion in all respects in connection with the Auction and the Sale Hearing. The Purchaser recognized that the Debtors were free to deal with any interested party in selling the Purchased Assets, complied with the Bid Procedures Order, and disclosed all payments to be made by the Purchaser in connection with the Sale.

I.    **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, and (iii) have taken, or will take, all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Sale.

J.    **Sale in the Best Interests of the Debtors' Estates and Creditors**. Good and sufficient reasons for approval of the APA and the Sale have been articulated, and the relief requested in the Motion and granted herein is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

K.    **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale outside of the ordinary course of business under section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization in that, among other things, the immediate approval by this Court of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates. Entry of an order approving the APA and all of the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the APA. The Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as the Sale does not and will not: (a) impair or restructure existing debt of, or equity interests in, the Debtors; (b) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (c) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or

(d) classify Claims or equity interests, compromise controversies or extend debt maturities. Given all the circumstances of the Cases and the adequacy and fair value of the purchase price under the APA, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

L. **Consideration**. The consideration provided by the Purchaser pursuant to the APA constitutes reasonably equivalent value or fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The APA represents a fair and reasonable offer to purchase the Purchased Assets and Assumed Liabilities under the circumstances of these chapter 11 cases. Based on the Motion and the record at the Sale Hearing, no other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets on terms that would give greater economic value to the Debtors' estates. Approval of the Motion and the APA, and consummation of the transactions contemplated thereby, is in the best interests of the Debtors, their creditors and all other parties in interest.

M. **Free and Clear**. The Seller is the sole and lawful owner of the Purchased Assets, including its right, title and interest arising under, in and to each Assigned Contract. The transfer of the Purchased Assets to the Purchaser under the APA will be a legal, valid, and effective transfer of the Purchased Assets and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code and including without limitation successor liability claims, and claims relating to the Excluded Assets and Excluded

Liabilities), or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto any time prior to the Closing Date (collectively, the "Interests"[5]); provided, however, that, notwithstanding anything to the contrary herein, the term "Interests" as used in this Order shall not include the Assumed Liabilities, the Permitted Liens. For the further avoidance of doubt, and without limiting the effect of any of the foregoing, the transfer, assumption and assignment, of any of the Assigned Contracts are free and clear of all Interests.

N. **Free and Clear Findings Needed by Purchaser**. The Purchaser asserts that it would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets to the Purchaser and the assumption and assignment or transfer of the Assigned Contracts was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

---

[5] The term "Interests" as used in this Order includes, without limitation: all Liens; Claims; encumbrances; obligations; debts; liabilities; demands; guaranties; options; rights; restrictions; contractual commitments; rights of first refusal or interests; any of the foregoing that purport to give to any party any defense, a defense or right of setoff, or recoupment against or a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights; all Excluded Liabilities, including without limitation those relating to Taxes (other than Transfer Taxes as set forth in the APA) of the Seller or relating to the Purchased Assets for any taxable period or portion thereof ending on or before the Closing Date; any of the foregoing arising under any mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, Liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, including, without limitation, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and any of the foregoing arising in connection with any agreements, acts, or failures to act, of Seller or any of the Seller's predecessors, Affiliates, or Representatives, including, but not limited to, any of the foregoing arising under any bulk-transfer laws, doctrines of successor liability or similar theories.

O. **No Liability Findings Needed by Purchaser**. Purchaser asserts that it will not consummate the transactions contemplated by the APA unless the APA specifically provides, and the Court specifically orders, that none of Purchaser or its Affiliates, members or shareholders or the Purchased Assets will have any liability whatsoever with respect to the Sale, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any liability, including any Interest or Excluded Liability other than the Assumed Liabilities.

P. **Satisfaction of 363(f) Standards**. The Seller may sell and transfer, and Purchaser may purchase, the Purchased Assets free and clear of any Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each holder of any Interest against the Debtors, their estate, or any of the Purchased Assets: (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of Interests who did not object, or who withdrew their objections, to the Motion and Sale are deemed, subject to the terms of this Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Interests are adequately protected by having their Interests attach to the proceeds ultimately attributable to the Purchased Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, that such Interests had prior to the Sale, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

Q.    **No Fraudulent Transfer**.  The APA was not entered into for the purpose of hindering, delaying or defrauding creditors of any of the Debtors.  The transactions contemplated by the APA are not fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

R.    **No Successor Liability**.  Except for the Assumed Liabilities, the transfer of the Purchased Assets to the Purchaser under the APA shall not result in the Purchaser, or any of its Affiliates, successors or assigns, having any liability or responsibility (i) for any Interest, or any other obligation, of or against the Debtors or their estates, and neither the Purchaser, nor any of its Affiliates, successors and assigns, shall, as a result of the Sale or any action taken in connection with the Sale, be deemed to (1) be a successor (or other similarly situated party) to any of the Debtors or (2) have, de facto or otherwise, merged with or into any of the Debtors, or (ii) to the Debtors or to third parties except as is expressly set forth in the APA.  Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the Purchased Assets from the Debtors to the Purchaser does not and will not subject the Purchaser, or any of its Affiliates, successors or assigns, or any of their respective properties (including the Purchased Assets) to any liability for Interests against the Debtors or Interests of the Debtors in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof, or the District of Columbia, applicable to such transactions, including, without limitation, any bulk-transfer laws, successor liability or similar theories.  Except as expressly provided for in the APA or this Order, the Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors.  Except for the Assumed Liabilities, the transfer of the Purchased Assets to the Purchaser (including the assumption and

assignment to the Purchaser of the Assigned Contracts), will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' businesses prior to the Closing Date, including, without limitation, any liability arising from any of the following: (1) any employment or labor agreements, consulting agreements, severance agreements, change-in-control agreements, or other similar agreements to which any Debtor is or was a party; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (3) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, and any obligations with respect thereto that arise from the with respect thereto that arise from the Employee Retirement Income Security Act of 1974, as amended , the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, as amended,  the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workers' compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other Environmental, Health and Safety Requirements, (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtors and (viii) the laws of the United States, any state, territory or possession thereof, or the District of Columbia,, including any statute, rule, regulations, order, decree, administrative or judicial doctrine or other laws  based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory of equitable

law, including, without limitation, any theory of antitrust or successor or transferee liability. For the avoidance of doubt, the liabilities set forth in this paragraph are included in the defined term "Interests" for all purposes herein.

S. **Cure/Adequate Assurance**. The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the APA, does not constitute unfair discrimination, is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors shall: (i) to the extent necessary, cure or provide adequate assurance of cure, of any default with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, on or before the Closing Date, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code (collectively, the "Cure Amounts"), on or before the Closing Date and with respect to any Leased Real Property that becomes an Extra Contract, in accordance with the APA after the Closing Date, as soon as practicable after the Cure Amounts. As set forth in, and as limited by the APA, Purchaser's contractual obligation to pay the Cure Amounts or reserve such amounts and perform under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(13) of the Bankruptcy Code. Any objections to the assumption and assignment of any of the Assigned Contracts to the Purchaser are hereby overruled. To the extent that any counterparty to an Assigned Contract did not object to its Cure Amount (as set forth on the respective Cure Notice) by the Cure Objection Deadline (as defined in the Motion), such

counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of their respective Assigned Contracts to the Purchaser as of the Closing as set forth in the APA. To the extent not withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, objections to the Cure Amount filed by counterparties to the Assigned Contracts, if any, are hereby denied and overruled on the merits with prejudice. The assumption, assignment and cure of any Extra Contracts will be addressed in one or more separate orders of the Court (each an "Additional Assumption Order"). Each Additional Assumption Order shall, to the extent applicable, incorporate the findings of fact and conclusions of law in this Order and the record at the Sale Hearing.

    T. **Personally Identifiable Information.** The Sale may include the transfer of "personally identifiable information," as defined in section 101(41 A) of the Bankruptcy Code. No "consumer privacy ombudsman" need be appointed under section 363(b)(1) of the Bankruptcy Code because Purchaser has agreed to adhere to any such privacy policies applicable to the Debtors.

    U. **Compelling Circumstances for an Immediate Sale**: Good and sufficient reasons for approval of the APA and the Sale have been articulated. The relief requested in the Motion is in the best interests of the Debtors, their estates and creditors. The Debtors have demonstrated sufficient and sound business justifications and compelling circumstances for the Sale outside of a plan of reorganization and the immediate consummation of the Sale to the Purchaser on the terms of the APA is necessary and appropriate to maximize the value of the Purchased Assets and Assumed Liabilities for the benefit of the Debtors, their estates and creditors. To maximize the value of the Purchased Assets and Assumed Liabilities and to

maintain and preserve the viability of the businesses to which the Purchased Assets relate, the transaction must be consummated within the time frame set forth in the APA.

NOW, THEREFORE, IT IS ORDERED, JUDGED AND DECREED THAT:

1       **Motion Is Granted**.  The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein and on the record of the Sale Hearing, which is incorporated herein in its entirety, and the Sale as contemplated thereby is granted and approved.

2       **Objections Overruled**.  Any objections to the entry of this Order or the relief granted herein or requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3       **Approval of APA**.  The APA and all of the terms and conditions thereto are hereby approved.  The Debtors are hereby authorized and directed, without further order of the Court, to take any and all actions necessary and appropriate to (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to the terms of the APA, (ii) close the Sale as contemplated by the APA and this Order; (iii) execute and deliver, perform under, consummate, implement, and close fully the APA, including the assumption and assignment to the Purchaser of the Assigned Contracts, together with all additional instruments and documents that may reasonable be necessary or desirable to implement the APA and Sale, and (iv) take all other and further actions as may be reasonably necessary to implement the transactions contemplated by the APA.  The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 363 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document. The automatic stay imposed by section 363 of the Bankruptcy Code

is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

4        **Free and Clear**.  Except as expressly provided for in the APA or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, as of the Closing Date, the Debtors shall transfer, and the Purchaser shall take title to and possession of, the Purchased Assets free and clear of all Interests, with all such Interests to attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Upon Closing the Purchaser shall take title to and possession of the Purchased Assets subject only to Permitted Liens and Assumed Liabilities.  All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser at the Closing.  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

5        **Valid Transfer**.  As of the Closing Date, the transactions contemplated by the APA effect a legal, valid, enforceable and effective sale and transfer of the Purchased Assets to Purchaser, and shall vest Purchaser with title to such Purchased Assets free and clear of any Interests of any kind whatsoever.  The Purchased Assets shall be transferred to the Purchaser "as is, where is" with all faults in accordance with the APA.  As of the Closing Date, the APA and the transactions and instruments contemplated thereby shall be specifically performable and

enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any trustee appointed in the Cases or any successor case.

6      **Injunction**. Except as expressly permitted by the APA or by this Order, all persons and entities (including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors) holding Interests in or against all or any portion of the Purchased Assets arising under, out of, or in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such person's or entity's Interests against the Purchaser, any of its Affiliates, successors or assigns, any property of any of the foregoing, or any of the Purchased Assets. On and after the Closing, no holder of any Interest against the Debtors shall interfere with Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interests, and all such Interests, if any, shall attach to the Debtors' interests in the Sale proceeds as provided in this Order in the order of their priority, with the same validity, force and effect which they have against such Purchased Assets immediately before the Closing, subject to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

7      **Release of Interests**. Except as otherwise expressly provided in the APA or this Order, any person or entity that has filed a statement or other document evidencing an Interest in, to or against the Purchased Assets, shall take all reasonable action necessary to confirm the removal of any and all such Interests on the Purchased Assets. If any of such persons or entities shall not have delivered to the Debtors in proper form, appropriate termination

statements, releases and documents in accordance with this paragraph, then the Purchaser is authorized to file, register or otherwise record a certified copy of this Order (and the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order), which, once filed, registered or otherwise recorded, shall constitute evidence of the release of all such Interests in, to or against the Purchased Assets. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of such Interests of record.

8      **Direction to Release Interests.**  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist.

9      **No Successor Liability**.  Neither Purchaser nor its Affiliates, successors or assigns shall, as a result of the consummation of the transaction contemplated by the APA: (a) be a successor to Seller or any of the Debtors or their estates; (b) have, de facto or otherwise, merged or consolidated with or into Seller or any of the Debtors or their estates; or (c) be a continuation or substantial continuation of the Seller or any of the Debtors or any enterprise of the Debtors.  Except for the Assumed Liabilities and Permitted Liens, the transfer of the Purchased Assets to Purchaser under the APA shall not result in Purchaser, its Affiliates, members, or shareholders, or the Purchased Assets, (i) having any liability or responsibility for any Claim against Seller or any of the Debtors or against an insider of the Debtors, (ii) having any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or

Excluded Liability, or (iii) having any liability or responsibility to Seller or any of the Debtors except as is expressly set forth in the APA.

10      **Examples of No Successor Liability**.  Without limiting the effect or scope of the foregoing, as a result of the Closing of the transactions contemplated by the APA, the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Seller or any of the Debtors or any obligations of Seller or any of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes (other than Transfer Taxes as set forth in the APA) arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing Date.

11      **Assumption and Assignment of Contracts**.  Each Assigned Contract is an executory contract or unexpired lease under Section 365 of the Bankruptcy Code.  Subject to the terms of the APA and this Order, upon the Closing, the Debtors are hereby authorized and directed to assume and assign each of the Assigned Contracts to the Purchaser pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code.  Except as otherwise expressly provided in the APA or this Order, on the Closing, the Assigned Contracts, whether entered into before or after the Petition Date, shall be transferred to the Purchaser, free and clear of all Interests of any kind or nature whatsoever, and shall remain in full force and effect for the benefit of Purchaser in

accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, which provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect. The requirements of sections 363 and 365 of the Bankruptcy Code are hereby deemed satisfied with respect to the Assigned Contracts. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment. The Debtors are authorized and directed to execute and deliver to Purchaser such documents or instruments as may be necessary to assign or transfer the Assigned Contracts to Purchaser at Closing.

12 **Cure Amounts for Assigned Contracts**. Any counterparty to the Assigned Contracts that did not object to its Cure Amount (as set forth on the respective Cure Schedule) by the Cure Objection Deadline (as defined in the Motion) is deemed to have consented to such Cure Amounts and the assignments of their respective Assigned Contracts to the Purchaser. The Cure Amounts (as set forth on the respective Cure Schedule) as to such non-objecting counterparties to Assigned Contracts constitute findings of the Court and shall be binding on such counterparties (and their successors and designees), and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment, irrespective of the terms of the Assigned Contracts. Upon payment of the Cure Amounts (as set forth on the respective Cure Schedule), such counterparties are forever barred, estopped, and permanently enjoined from (a) asserting against the Seller or the Purchaser, or the property of either of them, any default existing as of Closing, or against the Purchaser, any counterclaim, defense, setoff or any other Claim, Lien or Interest asserted or assertable against the Debtors; and

(b) imposing or charging against Purchaser or its Affiliates any accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment to Purchaser of the Assigned Contracts. To the extent not withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, objections to the Cure Amount filed by counterparties to the Assigned Contracts, if any, are hereby denied and overruled on the merits with prejudice. The assumption, assignment and cure of the Extra Contracts and with respect to the Leased Real Property, which may be designated until sixty (60) days after the Closing, an Assigned Contract, in accordance with the APA will be addressed pursuant to one or more Additional Assumption Orders. Notwithstanding anything to the contrary in this Order, and in accordance with the APA, through the date of the Closing, the Purchaser shall have the right to exclude from the Purchased Assets any one or more of the Contracts, in such case any such excluded Contract shall constitute an Excluded Asset, for all purposes and shall not constitute, for any purpose whatsoever, a Purchased Asset, and the Purchaser shall not incur any liability, obligation, or debt in connection with or related to such Excluded Assets. In the event the Purchaser exercises its right to exclude form the Purchased Assets one or more agreements that had been designated as an Assumed Contract (the " Excluded Contract"), on or before the Closing, the Debtors will serve a notice on the counterparties to Excluded Contracts.

13  **Prohibition of Actions Against Purchaser**. Except for the Assumed Liabilities and Permitted Liens, as set forth in the APA or otherwise expressly provided for in this Order, the Purchaser shall not have any liability or other obligation of the Debtors arising under or relating to the Purchased Assets and shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and shall have no successor or vicarious liabilities of any kind, character or nature whatsoever, including under any theory of antitrust, successor or

transferee liability, labor law, or *de facto* merger whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Purchased Assets prior to the Closing.

14    **Ipso Facto Clauses Ineffective**.  Upon the Debtors' assignment of the Assigned Contracts to the Purchaser under the provisions of this Order, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted to declare a default by the Debtors or Purchaser under such Assigned Contract or otherwise take action against the Purchaser, as a result of any Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assigned Contract.  The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contract.

15    **Effect of Order**.  On the Closing Date, this Order shall be considered and shall constitute (a) for any and all purposes, a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Purchased Assets to the Purchaser, and (b) other than as expressly provided for in the APA or in this Order, a determination that all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date shall have been unconditionally released, discharged and terminated as of the Closing Date, and that the Sale described herein have been effected.  This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets, and each of the foregoing is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

16      **Binding on Successors**.  The terms and provisions of the APA and this Order shall be binding in all respects upon the Debtors, their estates, the Purchaser, all creditors (whether known or unknown) of any Debtor, all holders of Interests against or on all or any portion of the Purchased Assets, any non-debtor counterparties to any of the Debtors' executory contracts or unexpired leases, any holders of equity interests in the Debtors, the Purchaser or their respective Affiliates, any trustee appointed in any of these Cases or any successor case, and the successors and assigns of each of the foregoing.   This Order, the APA and the other agreements contemplated thereby shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and the successors and assigns of each of the foregoing.

17      **Good Faith**.  The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts) with the Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing Date.  The Purchaser is a good faith Purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

18      **Fair Consideration**.   The consideration provided by the Purchaser pursuant to the APA for its purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.   The consideration provided by Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

19      **Retention of Jurisdiction**.   This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party, and the Assigned Contracts, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser; (b) interpret, implement and enforce the provisions of this Order and any related order; (c) protect the Purchaser against any Interests in the Purchased Assets of any kind or nature whatsoever that attached to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts and Additional Assigned Contracts.

20      **Surrender of Possession**.   All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which any of the Debtors hold an interest are hereby directed to surrender possession of the Purchased Assets either to (a) the Debtors before the Closing Date, or (b) to Purchaser on the Closing Date, unless possession of certain of the Purchased Assets shall remain with a third party pursuant to the terms of the Assigned Contracts.

21　**Fees and Expenses**.　Any obligations of the Debtors in favor of the Purchaser (including without limitation any obligation to pay any amounts or deliver documents to the Purchaser in connection with the APA) shall (i) be performed when due in the manner provided in the APA without further order of this Court, (ii) be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code (subject to the superpriority administrative claims granted with respect to the Debtors' debtor-in-possession financing), and (iii) not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with the Purchaser, its successors, or assigns.　Any amounts payable by the Debtors under the Bid Procedures Order, including without limitation the Break-Up Fee and Expense Reimbursement, shall be paid in the manner provided in the Bid Procedures Order. The Break-Up Fee and Expense Reimbursement shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code (subject to the superpriority administrative claims granted with respect to the Debtors' debtor-in-possession financing).

22　**Application of Sale Proceeds**.　Any and all valid and perfected Interests in Purchased Assets of the Debtors shall attach to any proceeds of such Purchased Assets immediately upon receipt of such proceeds by the Debtors (or any party acting on any Debtors' behalf) in the order of priority, and with the same validity, force and effect which they now have against such Purchased Assets, subject to any rights, claims and defenses the Debtors, their estates or any trustee for any Debtor, as applicable, may possess with respect thereto.　Upon the Closing Date, unless otherwise agreed to in writing between the Debtors, the Purchaser and the Post-petition Lenders  Seller shall (a) reserve a portion of the cash proceeds of the Sale equal to

the amount provided for in the Budget (as such term is defined in the APA) with respect to wind down expenses, and (b) pay all remaining cash proceeds of the Sale to the Post-petition Lender, in its capacity as such and in its capacity as Prepetition Senior Lender (as defined in the DIP Motion)) in accordance with their respective lien priorities.

23      **Non-Material Modifications**.  The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

24      **Subsequent Plan Provisions**.  Nothing contained in any subsequent order of this Court or any court of competent jurisdiction in these Cases or any successor case (including, without limitation, any order authorizing the sale of assets pursuant to sections 363, 365 or any other provision of the Bankruptcy Code or any order entered after the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code), or in any chapter 11 plan confirmed in any of the Cases or any order confirming any such plan, shall alter, conflict with, or derogate from, the provisions of the APA or this Order, which provisions shall survive and remain in full force and effect.

25      **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the APA or the other agreements contemplated thereby in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and the other agreements contemplated thereby be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

26     **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rules 6004 and 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

27     **No Bulk Sale**.  No bulk sale law or any similar law of any state or other jurisdiction applies in any way to the Sale.

28     **Preservation of Certain Records**.  Subject to further order of the Court, the Debtors and Purchaser are hereby ordered (and shall cause their Affiliates) to take appropriate measures to maintain and preserve all records held by each relating to the Purchased Assets for a period of three (3) years or such other period as may be required by applicable law; provided, however, that in no event shall the Debtors be required to preserve such records after these Cases are closed.

29     **Order Controls**.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Cases, the terms of this Order shall govern.  To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

Dated: _____, 2009
         Wilmington, Delaware

_____
THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE