# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

IN RE:                                ) **Chapter 11**
                                      )
**VELOCITY EXPRESS**                  ) **Case No.  09-13294 (MFW)**
**CORPORATION, et al.**[1]            )
                                      ) **(Jointly Administered)**
          **Debtors.**               )   *Rel. Doc .128*

## ORDER (I) AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO, AMONG OTHERS, THE AGENTS AND THE LENDERS, AND (II) GRANTING SUCH OTHER AND FURTHER RELIEF

This matter came before this Court on the motion (the "Motion") of Velocity Express Corporation, *et al.* (the "Debtors") requesting that this Court enter an order (i) authorizing Debtors to:  (a) use certain Cash Collateral; (b) incur Postpetition Debt ; (c) grant adequate protection and provide security and other relief to Burdale Capital Finance, Inc. ("Burdale"), in its capacity as agent ("Prepetition Agent") to the lenders under the Prepetition Documents ("Prepetition Lenders"), Wilmington Trust Company (as successor to Wells Fargo Bank, N.A.), in its capacity as trustee ("Subordinated Note Trustee") for the holders of the notes (the "Notes") issued under the Indenture (the "Subordinated Noteholders"), Burdale in its capacity as agent ("Postpetition Agent"; together with Prepetition Agent, "Agents") to the lenders under the Postpetition Documents ("Postpetition Lenders"; together with Prepetition Lenders, the "Lenders"), and ComVest Investment Partners III, LLP, as guarantor ("ComVest") under the Guaranty (the "ComVest Guaranty") dated as of September 24, 2009 in favor of the Postpetition Agent for the benefit of Postpetition Lenders; and (ii) granting such other and further relief. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

---

[1] The Debtors are Velocity Express Corporation, Velocity Express, Inc., VXP Mid-West, Inc., VXP Leasing Mid-West, Inc., U-Ship International, Inc., Velocity Express Leasing, Inc., Velocity Systems Franchising Corporation, CD&L, Inc., Click Messenger Service, Inc., Securities Courier Corporation, Olympic Courier Systems, Inc., Silver Star Express, Inc. and Clayton/National Courier Systems, Inc.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

      A.     On the Filing Date, Debtors filed duly authorized voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

      B.     The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

      C.     A Committee has been appointed in these Cases.

      D.     Subject to Paragraph 8(a) of this Order, Debtors admit, stipulate and agree that:

      1.     the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition First Liens and the prepetition financing relationship between Debtors, Prepetition Agent and Prepetition Lenders;

      2.     the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents;

      3.     as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed secured claim in an amount not less than $8,008,205 in the aggregate, exclusive of accrued and accruing Allowable 506(b) Amounts;

      4.     no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

-2-

5.    the Prepetition First Liens are Priority Liens, subject to Permitted Liens and secure payment of all of the Prepetition Debt;

6.    upon the entry of this Order, Prepetition Agent's interests in the Prepetition Collateral will be adequately protected, and for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Prepetition Lenders' interest in the Prepetition Collateral was not less than $9,500,000; provided, however, that nothing herein shall prejudice Prepetition Agent's and any Prepetition Lender's right to later:   (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a different valuation of the Prepetition Collateral; and nothing herein shall prejudice the right of any Challenge Party to seek a different valuation of the Prepetition Collateral pursuant to Paragraph 8.

7.    Debtors do not have, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Debt or otherwise, against the Prepetition Agent, the Prepetition Lenders and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

E.    Subject to Paragraph 8(a) of this Order, the Debtors admit, stipulate and agree that:

1.    the Subordinated Note Documents evidence and govern the Subordinated Note Indebtedness, the Prepetition Second Liens and the prepetition financing relationship between the Debtors, the Subordinated Note Trustee and the Subordinated Noteholders;

2.    the Subordinated Note Indebtedness constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Subordinated Note Documents;

3.    upon the entry of this Order, the Subordinated Note Trustee's interests in the Prepetition Collateral will be adequately protected.

-3-

4. as of the Filing Date, Debtors are liable for payment of the Subordinated Note Indebtedness, and the Subordinated Note Indebtedness shall be an allowed secured claim in an amount not less than $102,000,000 in the aggregate, exclusive of accrued and accruing amounts allowable under Code § 506(b); provided, however, nothing herein shall prejudice the right of any Challenge Party to seek a different valuation of the Prepetition Collateral pursuant to Paragraph 8.

5. no offsets, defenses or counterclaims to the Subordinated Note Indebtedness exist, and no portion of the Subordinated Note Indebtedness is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

6. the Subordinated Note Indebtedness is secured by valid Priority Liens subject to the Prepetition First Liens, the First Lien Replacement Liens, the Postpetition Liens, and the Permitted Liens and secure payment of the Subordinated Note Indebtedness;

7. Debtors do not have, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Subordinated Notes, Subordinated Notes Indebtedness, Subordinated Notes Documents, the ComVest Guaranty or otherwise, against the Subordinated Note Trustee, Subordinated Noteholders, ComVest and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

F. Prepetition Agent, Prepetition Lenders, Subordinated Note Trustee, and Subordinated Noteholders have consented to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

G. Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of their businesses. Except as provided below,

-4-

Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Agent and Postpetition Lenders.

H.     The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

I.     The Postpetition Debt is not and shall not be deemed a refinancing of the Prepetition Debt.

J.     The terms and conditions of the Postpetition Documents are fair and reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

K.     Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agents', Lenders', Subordinated Note Trustee's and Subordinated Noteholders' consent to the use of Cash Collateral and provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

L.     The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.     Authorization to Use Cash Collateral. Debtors are authorized to use Cash Collateral solely: (a) in accordance with the terms and provisions of this Order, (b) to the extent required to pay those expenses enumerated in the Budget, including the Carveout, as and when such expenses become due and payable, and (c) at any time to pay the Postpetition Charges.

2.     Procedure for Use of Cash Collateral.

(a)     Delivery of Cash Collateral to Postpetition Agent. Debtors shall deposit all Cash Collateral now or hereafter in their possession or under their control into the Blocked Accounts (or otherwise deliver such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon receipt thereof. If there is no Aggregate Debt outstanding and a Termination Date has occurred, there shall be no further use of Cash Collateral

-5-

except as may be authorized by subsequent order of this Court or otherwise consented to by the Subordinated Note Trustee.

(b) <u>Cash Collateral in Agents' or Lenders' Possession</u>. Postpetition Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its, any Lender's, Subordinated Note Trustee's or any Subordinated Noteholders' possession or control which constitute Aggregate Collateral or proceeds thereof.

(c) <u>Account Debtors</u>. Without further order of this Court, Debtors shall, and upon and after the occurrence of an Event of Default, Postpetition Agent may, directly notify in writing all account debtors of existing and future accounts receivable of the Debtors and instruct all such account debtors to make payments directly into the Blocked Account.

(d) <u>Application of Cash Collateral</u>. Postpetition Agent, at its election, is authorized to apply all Cash Collateral now or hereafter coming into Postpetition Agent's or any Lender's possession or control as follows: (1) first, an aggregate amount of $250,000 to be shared equally, to the payment of costs and expenses of Prepetition Agent and Subordinated Note Trustee in accordance with Section 6(c) of the Intercreditor Agreement; (2) second, to the payment of Prepetition Debt consisting of all other Allowable 506(b) Amounts; (3) third, to the payment of all other Prepetition Debt in accordance with the Prepetition Documents; (4) fourth, to payment of Postpetition Debt consisting of Postpetition Charges; and (5) fifth, to payment of other Postpetition Debt in accordance with the Postpetition Documents. Subject to Paragraph 8(a) in respect of Prepetition Debt, all such applications to Prepetition Debt or Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee. Notwithstanding anything herein to the contrary, in the event that no Postpetition Debt is outstanding, Postpetition Agent, in its discretion, may authorize the Debtors to use Cash Collateral to fund Budget expenses in lieu of incurring additional Postpetition Debt.

(e) <u>Prohibition Against Use of Cash Collateral</u>. Except as provided for in this Order, Debtors will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363: (1) Agents have consented to such order; (2) at the time such an order is entered, there is no Aggregate Debt outstanding and no obligation of

-6-

Postpetition Lenders to extend Postpetition Debt; or (3) such Cash Collateral is first used to fully and finally pay the Aggregate Debt in cash.

3.  Authorization To Incur Postpetition Debt.

(a)  Postpetition Documents. Debtors are hereby authorized and have agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Agent and Postpetition Lenders find reasonably necessary to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents, the Interim Order, and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, the Interim Order, and this Order, this Order shall govern and control.

(b)  Permitted Uses of Postpetition Debt. Debtors are authorized and have agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order, (2) to the extent required to pay those expenses enumerated in the Budget, including the Carveout, as and when such expenses become due and payable, subject to the Permitted Variance, and (3) to pay the Postpetition Charges. If Postpetition Lenders advance monies to Debtors and Debtors use such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

(c)  Additional Terms of Postpetition Debt.

(i)  Maximum Amount. The maximum principal amount of Postpetition Debt shall not exceed $14,000,000 minus the outstanding principal amount of Prepetition Debt, subject to the Borrowing Base requirements under the Postpetition Agreement.

(ii)  Interest/Letter of Credit Fee. The Postpetition Debt shall bear interest at a per annum rate equal to the "Base Rate" (as defined in the Loan Agreement) plus 6.00% per annum. The Base Rate shall be subject to a floor of 4.00% per annum. Letters of credit fee for letters of credit issued on or after the Filing Date shall be calculated as the average daily face amount of such outstanding letter of credit multiplied by 6.00% per annum.

-7-

(iii)    Closing Fee/Other Fees.    Debtors shall pay to Postpetition Agent, for the benefit of Postpetition Lenders, a closing fee (the "Closing Fee") in an amount equal to $175,000. The Closing Fee shall be fully earned and non-refundable upon the closing of the Postpetition Agreement. The fees described in Sections 3.3(d)[2] and 13.1[3] of the Loan Agreement will constitute Postpetition Debt, payable under the Postpetition Agreement on the same terms and conditions as described in such Sections, and any payment of such fees under such Postpetition Agreement shall reduce, on a dollar for dollar basis, the Debtors' obligation to pay such fees under the Loan Agreement as Prepetition Debt.

(iv)    Maturity.    The Postpetition Debt shall mature and be due and payable in full by Debtors on the Termination Date.

(v)    Guarantors.    The Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Agents and Lenders pursuant to section 363 or additional financing by Postpetition Agent and Postpetition Lenders pursuant to section 364 of the Bankruptcy Code. Each Guarantor is and shall remain liable for the guaranteed obligations under the Guaranty or the Canadian Guaranty, as applicable, including, without limitation, all Postpetition Debt, and any refinancing thereof. ComVest shall execute and deliver to Postpetition Agent the ComVest Guaranty and all security documents in connection therewith, pursuant to which ComVest shall guaranty the Guarantied Obligations (as defined in the ComVest Guaranty).

(vi)    Account Control Agreements.    All agreements with respect to Blocked Accounts in effect as of the Filing Date shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order.

(vii)    Joint and Several Liability of Debtors.    The obligations of each Debtor under this Order shall be joint and several.

(d)    Superpriority Administrative Expense Status; Postpetition Liens. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code (subject to Paragraph 7 of this Order). In addition,

---

[2] Such fee in an amount equal to the greater of (i) $500,000 and (ii) 2.5% of the Maximum Credit, as the "Success Fee" as defined in the Loan Agreement.

[3] Such fee in an amount up to 3% of the Maximum Credit ($360,000) as the "Early Termination Fee" as defined in the Loan Agreement.

WLM 518983.1

Postpetition Agent is hereby granted the Postpetition Liens, for the benefit of Postpetition Lenders to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition First Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to the Permitted Liens, the Prepetition First Liens and the First Lien Replacement Liens) with priority over the Prepetition Second Liens and the Second Lien Replacement Liens without any further action by Debtors or Postpetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; (5) subject to Paragraph 8 of this Order, shall not be subject to Code § 510; and (6) shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the Aggregate Collateral located on such leased premises; provided however that the provision of this Clause 6 shall only be effective as against such lienholders who hold a lien avoidable under Section 545 of the Code or who are otherwise provided with notice of the entry of this Order and who fail to file and serve a written objection thereto within 15 days after such notice. Notwithstanding the foregoing, Debtors shall execute and deliver to Postpetition Agent such financing statements, mortgages, instruments and other documents as Postpetition Agent may request from time to time, and any such documents filed by Postpetition Agent shall be deemed filed as of the Filing Date. Further, Prepetition Agent shall serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Agent and Postpetition Lenders without further action by any party.

(e) <u>Prohibition Against Additional Debt</u>. Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition First Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364: (1) Agents have consented to such order; (2) at the time such an order is entered, there is no Aggregate Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such

credit or debt is first used fully and finally pay the Aggregate Debt in cash; provided, however, ComVest may, solely to the extent expressly permitted by and in accordance with the provisions of the Postpetition Agreement, extend postpetition credit to the Debtors and such extension of credit shall be secured by a properly perfected lien on the Collateral that is subordinated and subject to only to the Permitted Liens (but for the sake of clarity, shall be senior to the Prepetition Second Liens), the Prepetition First Liens, the First Lien Replacement Liens and the Postpetition Liens as permitted in section 7.8 of the Postpetition Agreement so long as (i) the terms and conditions thereof (including without limitation subordination terms) are reasonably acceptable in form and substance to Postpetition Agent, (ii) both the credit and the related liens are fully subordinated to all of the Aggregate Debt (and all related Prepetition First Liens, First Lien Replacement Liens and Postpetition Liens), and (iii) no payments with respect thereto shall be due or permitted to be made or received, and the holder thereof shall not be permitted to take any enforcement actions with respect thereto, in each case until all of the Aggregate Debt have been indefeasibly paid in full in cash and the Postpetition Agreement has been terminated (and any payments received in contravention thereof shall be required to be promptly turn-over to the Postpetition Agent for application to the Aggregate Debt).

4.    <u>Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition First Liens</u>. Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a)    <u>Priority of Prepetition First Liens/Allowance of Prepetition Lenders' Claim</u>. Subject to the terms of Paragraph 8(a) of this Order: (1) the Prepetition First Liens shall constitute Priority Liens, subject only to the Permitted Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Prepetition Agent's and Prepetition Lenders' claim with respect to the Prepetition Debt shall for all purposes

-10-

constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $8,008,205.84, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b)  First Lien Replacement Liens.  Prepetition Agent is hereby granted the First Lien Replacement Liens, for the benefit of Prepetition Lenders, as security for payment of the Prepetition Debt and as adequate protection to the extent required under Code § 361(2), 362, 363, or 364 for any decrease in value of the interests of the Prepetition Agent and Prepetition Lenders in the Prepetition Collateral after the Filing Date.  The First Lien Replacement Liens: (1) are and shall be in addition to the Prepetition First Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Prepetition Agent and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Prepetition Agent such financing statements, mortgages, instruments and other documents as Prepetition Agent may request from time to time.

(c)  Priority of Prepetition Second Liens/Allowance of Subordinated Noteholders' Claim.  Subject to the terms of Paragraph 8(a) of this Order: (1) the Prepetition Second Liens shall constitute Priority Liens, subject only to the Permitted Liens, the Prepetition First Liens, the First Lien Replacement Liens and the Postpetition Liens; (2) the Subordinated Note Indebtedness constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Subordinated Note Documents; and (3) no offsets, defenses or counterclaims to the Subordinated Note Indebtedness exist, and no portion of the Subordinated Note Indebtedness is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable non-bankruptcy law.

(d)  Second Lien Replacement Liens.  Subordinated Note Trustee is hereby granted the Second Lien Replacement Liens, for the benefit of Subordinated Noteholders, as security for payment of the Subordinated Note Indebtedness and as adequate protection to the extent required under Code § 361(2), 362, 363, or 364 for any decrease in value of the interests of the Subordinated Note Trustee in the Prepetition Collateral after the Filing Date.  The Second

-11-

Lien Replacement Liens: (1) are and shall be in addition to the Prepetition Second Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Subordinated Note Trustee and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; and (4) shall be junior to the Permitted Liens, the Prepetition First Liens, the First Lien Replacement Liens and the Postpetition Liens. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Subordinated Note Trustee such financing statements, mortgages, instruments and other documents as Subordinated Note Trustee may request from time to time. As between Prepetition Agent and Prepetition Lenders on the one hand, and Subordinated Note Trustee and Subordinated Noteholders on the other hand, the Second Lien Replacement Liens and other adequate protection rights granted hereunder or in the Cases in favor of Subordinated Note Trustee (for the benefit of Subordinated Noteholders) shall be junior in priority to all First Lien Replacement Liens and other adequate protection rights granted to Prepetition Agent and the Prepetition Lenders hereunder or in the Cases; and all such Second Lien Replacement Liens and other adequate protection rights shall otherwise be subject in all respects to the terms and provisions of the Intercreditor Agreement. The Intercreditor Agreement is valid and binding upon the Prepetition Lenders, the Prepetition Agent, the Subordinated Note Trustee and the Subordinated Noteholders notwithstanding the entry of this Order and shall constitute a "subordination agreement" within the meaning of section 510 of the Bankruptcy Code, enforceable in accordance with its terms. Nothing in this Order or the Postpetition Documents shall impair, diminish or otherwise affect the Intercreditor Agreement In furtherance of the foregoing, the Debtors' obligations arising under the Postpetition Documents or in favor of the Lenders under this Order are and shall be deemed included within the meaning of "Senior Indebtedness" as that term is defined in the Intercreditor Agreement. The Subordinated Note Indebtedness and all obligations of payment thereof are and shall be fully subordinate to the payment of the Aggregate Debt. As further adequate protection of the interests of the Subordinated Note Trustee on account of the Prepetition Second Liens, the Subordinated Note Trustee shall receive payment, no later than twenty (20) days following receipt by the Debtors, with a copy to Agents and counsel for the Committee, of any invoice for the reasonable fees and expenses, including legal fees, of the Subordinated Note Trustee, and no recipient of any such

-12-

payment shall be required to file, with respect thereto, any applications with this Court; provided, however, that the maximum amount of such payments shall not exceed $125,000 without further order of this Court; provided further, that the counsel for the Subordinated Note Trustee shall provide notice of all requested fees to the Debtors, the Postpetition Agent and the Committee, each of which shall have ten (10) days upon receipt thereof within which to object to such fees based solely upon the grounds of reasonableness.

(e) Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Prepetition Agent, Prepetition Lenders, Subordinated Note Trustee and/or Subordinated Noteholders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Agent, for the benefit Prepetition Lenders, and Subordinated Note Trustee, for the benefit of Subordinated Noteholders, shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Cases (other than Postpetition Agent's and Postpetition Lenders' claims under Code § 364) that are incurred under any provision of the Code, subject to Paragraph 7 of this Order; and (2) the claims of any other party in interest under Code § 507(b); provided, however, that Prepetition Agent's allowed claims under section 507(b) shall be senior in right of payment to the Subordinated Note Trustee's allowed claims under section 507(b); provided, further, however, that until the Aggregate Debt has been paid in full, in cash, or Prepetition Agent otherwise agrees in writing, any allowed § 507(b) claim of the Subordinated Note Trustee may be satisfied under a plan or reorganization by any combination of cash, securities, or other property having a value, as of the effective date of such plan, equal to the allowed amount of such claim.

5. Termination Date; Rights and Remedies.

(a) Effect of Termination Date. Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date, and without further notice or order of Court: (1) this Order and Debtors' authorization to use Cash Collateral and incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election: (i) the Postpetition Debt shall be immediately due and payable, (ii) Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the Aggregate

-13-

Debt in accordance with Paragraph 2(d) of this Order and (iii) Postpetition Agent shall be entitled to setoff any cash that is subject to the Lender's Postpetition Liens or Prepetition First Liens in any Lender's, Subordinated Note Trustee's or any Subordinated Noteholders' possession or control or that is otherwise subject to any right of setoff that the Lender or its affiliates has and apply such cash to the Aggregate Debt in accordance with Paragraph 2(b) of this Order.

(b) <u>Rights and Remedies</u>. On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election, without further order of the Court: (1) Agents shall have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law; and (2) Debtors shall surrender the Aggregate Collateral and otherwise cooperate with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law. Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, any party in interest may seek an order of this Court determining that the Termination Date did not occur; provided, however, that during such five (5) business day period, Postpetition Lenders shall have no obligation to advance Postpetition Debt to Debtors.

(c) <u>Access to Collateral</u>. Notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises where (i) under such lease, an Event of Default has occurred and is continuing, or (ii) such lease has otherwise expired, Postpetition Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that Postpetition Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Postpetition Agent, calculated on a per diem basis.

6. <u>Carveout</u>.

-14-

(a)  Carveout Terms.  The Carveout with respect to the Carveout Professionals in the aggregate: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professionals for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professionals; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Agent or the Postpetition Agent) before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral.  Further, Postpetition Agent shall have the right to subtract from the "Borrowing Base" and the "Maximum Advance Amount" (each as defined in the Loan Agreement) an amount equal to the sum of the aggregate amount of fees and expenses set forth in the Budget for the Carveout Professionals (minus amounts paid from time to time).  Upon the Termination Date, and notwithstanding anything herein to the contrary, Postpetition Lenders shall provide Postpetition Debt to the Debtors in an amount equal to (a) the Carveout amount for each Carveout Professional determined in clause (1) above and (b) an amount equal to $25,000, which Postpetition Debt shall be used by the Debtors for the sole purpose of funding the Carveout Professionals after the Termination Date. Except as set forth in the preceding sentence, Postpetition Lenders shall have no obligation to fund any fees or expenses accrued on, prior to, or after the Termination Date.

(b)  Carveout Usage.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or the Carveout Professionals, in connection with claims, actions adverse to Agents' or Lenders' or the Subordinated Note Trustee's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Agents' or Lenders' or the Subordinated Note Trustee's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral, incurring indebtedness, or selling any Aggregate Collateral without Agents' and Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt and the Subordinated Note

-15-

Indebtedness or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agents, Lenders and the Subordinated Note Trustee, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agents or Lenders or the Subordinated Note Trustee; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8(a) of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of the Interim Order or this Order or any amendment hereto consented to by Postpetition Agent.

(c) <u>Carveout Procedure</u>. The Debtors shall periodically, upon the request of the Postpetition Agent, provide to the Postpetition Agent (with a copy to the Subordinated Note Trustee) a written report (the "<u>Carveout Report</u>"), in which the Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Agents, Lenders or the Subordinated Note Trustee to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Agents, any Lender or the Subordinated Note Trustee to object to the allowance and payment of such fees, costs or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

7. <u>No Surcharge</u>. In the exercise of their business judgment, Debtors (or any Trustee) agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Agents and Lenders. Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Agents and Lenders under Code § 506(c).

-16-

Therefore, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Agents, Lenders, Subordinated Note Trustee, Subordinated Noteholders or the Aggregate Collateral; provided, however, that such waivers shall not be effective with respect to the Subordinated Note Trustee or the Subordinated Noteholders until the Aggregate Debt has been indefeasibly paid in full. In reliance on the foregoing, Agents, Lenders, Subordinated Note Trustee and Subordinated Noteholders have agreed to the entry of this Order.

8.      Reservation of Rights; Bar of Challenges and Claims. The stipulations and representations contained in this Order, including, without limitation, Paragraphs D and 4(a), shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtors receive notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)      Challenge Procedure. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must initiate an action or adversary proceeding relating thereto prior to the expiration of the Investigation Period. The Committee is granted derivative standing to file and prosecute any such action or adversary proceeding.

(b)      Bar of Challenges and Claims. Except to the except subject to a timely filed Challenge, upon the expiration of the Investigation Period (or such later date as agreed in writing by Prepetition Agent, Prepetition Lenders and Subordinated Note Trustee, solely with respect to a potential Challenge against such party, or by an order of this Court, for cause shown), without further order of the Court, (1) the claims, liens and security interests of the Prepetition Agent, the Prepetition Lenders and the Subordinated Note Trustee shall be deemed to be finally allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived and released Prepetition Agent, Prepetition Lenders, Subordinated Note Trustee and their respective officers, directors, principals, attorneys,

-17-

consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Documents, the Subordinated Note Indebtedness, the Subordinated Note Documents or otherwise. Upon entry of a final, non-appealable order determining that any payment of Prepetition Debt resulted in payment of an unsecured claim of the Prepetition Lenders, such amount shall be disgorged subject to Paragraph 2(d).

9. <u>Subrogation Rights of ComVest</u>. Nothing herein shall prejudice or impair ComVest's rights of subrogation described in the ComVest Guaranty with respect to any and all of the rights of the Lenders arising under and relating to the Interim Order, this Order, the Aggregate Collateral, the Aggregate Debt, the Prepetition Documents and the Postpetition Documents.

10. <u>Right to Credit Bid</u>. Pursuant to Code § 363(k), (a) Postpetition Agent shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (b) subject to Paragraph 8, Prepetition Agent shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (c) subject to Paragraph 8 and the terms of the Indenture, Subordinated Note Trustee and Subordinated Noteholders shall have the right to use the Subordinated Note Indebtedness, or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, so long as any such credit bid by Subordinated Note Trustee and Subordinated Noteholders provides for a cash payment sufficient to repay the Aggregate Debt in full in cash.

11. <u>Plan</u>. Unless Agents consent thereto, Debtors shall not seek entry of an order confirming a plan in these Cases unless, in connection and concurrently with the entry of an order granting the relief requested in such motion, the Aggregate Debt is paid in full in cash on the earlier of (a) the effective date thereof, and (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

-18-

12.     Waiver of Right to Return/Consent to Setoff. Debtors hereby waive their rights: (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553.

13.     Indemnification. Debtors shall indemnify and hold harmless: (a) the Postpetition Agent and Postpetition Lenders in accordance with the Postpetition Documents, (b) subject to Paragraph 8, the Prepetition Agent and Prepetition Lenders in accordance with the Prepetition Documents, and (c) subject to Paragraph 8, the Subordinated Note Trustee in accordance with the Subordinated Note Documents.

14.     No Marshaling. No Agent nor any Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

15.     Postpetition Charges. All Postpetition Charges are hereby approved and shall be promptly paid by Debtors in accordance with the Interim Order, this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment of the Postpetition Charges, provided however the Agent shall provide ComVest, the Subordinated Note Trustee, the Committee and the United States Trustee with copies of all documents evidencing the Postpetition Charges (which may be redacted or withheld to the extent necessary to maintain confidential and/or privilege information); provided further, however, that if the Committee objects within ten (10) days of receipt of such documents on the grounds that any professional fees and expenses included within the Postpetition Charges are not reasonable, then Debtors may only pay such fees and expenses upon subsequent order of this Court.

16.     Force and Effect of Prepetition Documents. Except as modified herein and subject to the other provisions of the Interim Order, this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt. To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents, the Interim Order and this Order, this Order shall govern and control.

17.     Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders and, subject to the terms of the Intercreditor

-19-

Agreement, the Subordinated Note Trustee to the extent necessary to effectuate the provisions of the Interim Order and this Order, including, after the Termination Date, to permit Agents and Lenders to exercise their respective rights contemplated by Paragraph 5(b) above.

18. <u>No Waiver</u>. Agents, Lenders and the Subordinated Note Trustee shall not be deemed to have suspended or waived any of their rights or remedies under the Interim Order, this Order, the Prepetition Documents, the Postpetition Documents, the Subordinated Note Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agents or the Lenders or the Subordinated Note Trustee, as applicable, and directed to Debtors. No failure of Agents or Lenders or the Subordinated Note Trustee to require strict performance by Debtors (or by any Trustee) of any provision of the Interim Order, this Order shall waive, affect or diminish any right of Agents or Lenders or the Subordinated Note Trustee thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or Lenders the Subordinated Note Trustee in the exercise of any right or remedy under the Interim Order, this Order, the Prepetition Documents, the Postpetition Documents, the Subordinated Note Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Prepetition Agent, the Prepetition Lenders, or the Subordinated Note Trustee of any of their rights under the Interim Order, the Prepetition Documents, the Subordinated Note Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

19. "<u>Responsible Person</u>." By accepting the Budget submitted to them by Debtors and by taking any other actions pursuant to the Interim Order or this Order, Postpetition Agent, Postpetition Lenders and the Subordinated Note Trustee shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

20. <u>Release</u>. Upon the date that the Postpetition Debt is paid in full, in cash, the Postpetition Liens shall not be released unless and until Debtors shall have executed and

-20-

delivered to Postpetition Agent and Postpetition Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Postpetition Documents. A copy of any such release shall be provided to counsel for the Committee.

21. Insurance. Debtors agree to deliver to Agents and Lenders evidence, satisfactory to Agents and Lenders, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents and the Postpetition Documents are maintained in full force and effect with respect to the Aggregate Collateral and Aggregate Debt, and that each Agent is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies, as its interests may appear.

22. Reporting Requirements. Debtors shall provide the Committee with the same reporting and information provided to and on the same timing a the Postpetition Agent as required under Section 3.15 of the Postpetition Agreement.

23. Amendments. Debtors, Postpetition Agent and the Postpetition Lenders required under the Loan Agreement may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor, including the Subordinated Note Trustee, or other party-in-interest, (b) such modifications or amendments are not prohibited by the Intercreditor Agreement, and (c) notice of any such amendment or modification is provided to counsel to the Subordinated Note Trustee and the Committee and filed with this Court; provided further, that if the Committee notifies the Debtors in writing that it opposes such proposed amendment or modification within three (3) business days of receipt thereof, the Debtors must seek Court approval prior to entry.

24. Proof of Claim. Neither the Prepetition Agent nor any of the Prepetition Lenders shall be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof. Notwithstanding the foregoing, or any subsequent order of Court concerning proof of claim filing requirements, Prepetition Agent is authorized (but not obligated) to file a

-21-

single master proof of claim in the Cases on behalf of itself and the Prepetition Lenders on account of their claims arising under the Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors. Neither the Subordinated Note Trustee nor any Subordinated Noteholder shall be required to file a proof of claim with respect to any of the Subordinated Note Indebtedness and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof. Notwithstanding the foregoing, or any subsequent order of Court concerning proof of claim filing requirements, the Subordinated Note Trustee is authorized (but not obligated) to file a single master proof of claim in the Cases on behalf of itself and the Subordinated Noteholders on account of their claims arising under the Subordinated Note Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

25.     Binding Effect. Except as provided in Paragraph 8(a) herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 8(a) of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Agent and Postpetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

26.     Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any

-22-

conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Agent and Postpetition Lenders under Code §§ 364(c) and (f), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly and finally paid in cash in full and discharged.

Hon. Mary F. Walrath
United States Bankruptcy Judge

Dated: Oct 16, 2009
Wilmington, Delaware

WLM 518983.1

## EXHIBIT A

## DEFINED TERMS

1.   *Aggregate Collateral.* Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.   *Aggregate Debt.* Collectively, the Prepetition Debt and the Postpetition Debt.

3.   *Allowable 506(b) Amounts.* To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in Section 3.1 of the Loan Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses incurred by Prepetition Agent and Prepetition Lenders before, on, or after the Filing Date in connection with: (a) the negotiation, preparation and submission of the Interim Order, this Order and any other order or document related hereto, and (b) the representation of Prepetition Agents and Prepetition Lenders in the Cases, including in defending any Challenge, including, without limitation, the fees set forth in Sections 3.3(d) and 13.1 of the Loan Agreement.

4.   *APA.* The "APA", as that term is defined in the Postpetition Agreement.

5.   *Blocked Accounts.* The "Blocked Accounts", as that term is defined in the Loan Agreement.

6.   *Borrowers.* Velocity Express Corporation, Velocity Express, Inc. and Velocity Express Leasing, Inc.

7.   *Budget.* The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Postpetition Agent and the Postpetition Lenders required under the Loan Agreement.

8.   *Canadian Guarantors.* USDS Canada Ltd. and Velocity Express Canada Ltd.

9.   *Canadian Guaranty.* Section 15 of the Loan Agreement (to the extent Canadian Guarantors are subject thereto, as provided in Section 3.22 of the Postpetition Agreement), along with any further guaranty provided by the Canadian Guarantors pursuant to Section 3.14.10 of the Postpetition Agreement, in each case, as amended, modified, supplemented, or replaced from time to time.

10.   *Carveout.* Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 6(a) of this Order.

11. ***Carveout Professionals.*** The professionals described in the Budget and authorized by the Court to be retained by the Debtors, the Committee, and the United States Trustee.

12. ***Cases.*** The chapter 11 cases or any superseding chapter 7 cases of the Debtors.

13. ***Cash Collateral.*** All "cash collateral," as that term is defined in Code § 363(a), in which Agents (on behalf of Lenders) have an interest, all deposits subject to setoff rights in favor of Agents and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

14. ***Challenge.*** A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition First Liens or the Prepetition Second Liens or any other claims or causes of action against Prepetition Agent, Prepetition Lenders and the Subordinated Note Trustee, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 8(a) of this Order.

15. ***Challenge Party.*** The Committee, any Trustee, or other party-in-interest with the requisite standing, but excluding Subordinated Note Trustee and Subordinated Noteholders.

16. ***Code.*** The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

17. ***Committee.*** Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

18. ***Event of Default.*** At Postpetition Agent's election, (a) the occurrence and continuance of any Event of Default first arising after the Filing Date under the Loan Agreement; provided, however, that Borrowers shall have an additional five (5) business days (for a total of twenty (20) business days) from the date of the Postpetition Agreement to comply with Section 3.14.10 thereof; (b) Debtors failure to comply with the covenants or perform any of their obligations in strict accordance with the terms of this Order; and (c) the commencement of an adversary proceeding or contested matter objecting to the extend, validity or priority of the Prepetition Debt and/or the Prepetition First Liens.

19. ***Filing Date.*** September 24, 2009.

20. ***Final Hearing.*** The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

21. ***First Lien Replacement Liens.*** Priority Liens in the Postpetition Collateral granted to Prepetition Agent (for the benefit of the Prepetition Lenders) pursuant to this Order, subject only to the Postpetition Liens and the Permitted Liens.

22.     *Guarantors*.  Collectively, the Prepetition Guarantors, the New Guarantors and the Canadian Guarantors.

23.     *Guaranty*.  The guaranty set forth in Section 15 of the Loan Agreement, as amended, modified, supplemented, or replaced from time to time.

24.     *Indenture*.  That certain Indenture, dated as of July 3, 2006, between VEC and Subordinated Note Trustee, as amended by the Supplemental Indenture, dated as of August 17, 2006, the Second Supplemental Indenture, dated as of December 22, 2006, the Third Supplemental Indenture, dated as of July 25, 2007 the Fourth Supplemental Indenture, dated as of May 19, 2008 and the Fifth Supplemental Indenture, dated as of the March 13, 2009, as amended, modified, supplemented, or replaced from time to time.

25.     *Intercreditor Agreement*.  That certain Intercreditor Agreement dated as of March 13, 2009, between Prepetition Agent and Subordinated Note Trustee, as amended, modified, supplemented, or replaced from time to time.

26.     *Interim Hearing*.  The interim hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

27.     *Interim Order*.  The order authorizing Debtors to use Cash Collateral and incur Postpetition Debt pending the Final Hearing entered at or in connection with the Interim Hearing on terms acceptable to Agent and Lenders.

28.     *Investigation Period*.  The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, and (2) sixty (60) days after the date that a Committee is formed.

29.     *Loan Agreement*.  That certain Loan and Security Agreement dated as of March 13, 2009, by and among Borrowers, Prepetition Guarantors, Prepetition Agent and Prepetition Lenders party thereto, as amended, modified and supplemented from time to time.

30.     *Motion*.  The motion filed by Debtors seeking entry of the Interim Order and this Order.

31.     *New Guarantors*.  Corporate Express Distribution Service, Inc., KBD Services, Inc. and CD&L Air Freight, Inc.

32.     *New Money*.  The amount of Aggregate Debt minus the amount of Prepetition Debt repaid in accordance with this Order and retained by Prepetition Lenders.

33.     *Obligations.*  The "Obligations", as that term is defined in the Loan Agreement.

34.     *Permitted Liens*.  Collectively, (a) the Carveout, (b) a lien in the amount up to $125,000 for payment of costs and expenses of Subordinated Note Trustee as provided for in Section 6(c) of the Intercreditor Agreement, and (c) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition First Liens, (2) were not subordinated by agreement or

applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

35.    *Permitted Variance.*  The variance as set forth in Section 6.8 of the Loan Agreement.

36.    *Postpetition Agreement.*  That certain Postpetition Agreement dated as of September 24, 2009, by and between Borrowers, Guarantors, Postpetition Agent and Postpetition Lenders party thereto, as amended, modified, supplemented, replaced or refinanced from time to time.

37.    *Postpetition Charges.*  Interest as set forth in Paragraph 3(c)(iii) of this Order and all fees, costs, and expenses due or coming due in connection with the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget), including, without limitation, the fees set forth in Sections 3.3(d) and 13.1 of the Loan Agreement, to the extent not paid as Allowable 506(b) Amounts.

38.    *Postpetition Collateral.*  All of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553 (collectively, such claims and proceeds, the *"Avoidance Actions"*)), all leaseholds, all other "Collateral" (as that term is defined in the Loan Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing; provided, however that the Postpetition Collateral consisting of Avoidance Actions and other property of the Debtors' estates not subject to a Priority Lien securing the Prepetition Debt as of the Filing Date, shall secure only that portion of Postpetition Debt consisting of New Money plus Postpetition Charges.

39.    *Postpetition Debt.*  All indebtedness or obligations of Debtors to Postpetition Agent and Postpetition Lenders incurred on or after the Filing Date pursuant to this Order or otherwise, including all Obligations and any advances made by Postpetition Lenders to pay the Carveout and including all Postpetition Charges.

40.    *Postpetition Documents.*  The Postpetition Agreement and the "Other Documents" (as defined in the Postpetition Agreement), as amended, modified, supplemented, exchanged, replaced, refinanced or renewed from time to time with the prior written consent of Postpetition Agent and the Postpetition Lenders required under the Loan Agreement.

41.    *Postpetition Liens.*  Priority Liens in the Aggregate Collateral, subject only to the Permitted Liens, the Prepetition First Liens, and the First Lien Replacement Liens.

42.    *Prepetition Collateral.*  All of the "Collateral" (as that term is defined in the Loan Agreement) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

43.    *Prepetition Debt.*  (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Loan Agreement),

and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

44. **_Prepetition Documents._** The Loan Agreement and the "Other Documents" (as that term is defined in the Loan Agreement).

45. **_Prepetition First Liens._** Prepetition Agent's (on behalf of Prepetition Lenders) asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to the Permitted Liens.

46. **_Prepetition Guarantors._** The "Guarantors" to the Loan Agreement as of the Filing Date.

47. **_Prepetition Second Liens._** Subordinated Note Trustee's (on behalf of Subordinated Noteholders) asserted security interests in the Prepetition Collateral under the Subordinated Note Documents, subject only to the Permitted Liens, the Prepetition First Liens, the First Lien Replacement Liens and the Postpetition Liens.

48. **_Prepetition Third Party Documents._** Collectively, Debtors' deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Agent has an interest.

49. **_Priority Liens._** Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

50. **_Sale Covenants._** Those covenants set forth in Section 3.17 of the Postpetition Agreement.

51. **_Second Lien Replacement Liens._** Priority Liens in the Postpetition Collateral granted to Subordinated Note Trustee (for the benefit of the Subordinated Noteholders) pursuant to this Order, subject only to the Permitted Liens, the Prepetition First Liens, the First Lien Replacement Liens and the Postpetition Liens.

52. **_Subordinated Note Documents._** The Indenture, the Notes and the "Security Documents" (as defined in the Indenture).

53. **_Subordinated Note Indebtedness._** The "Note Obligations" (as defined in the Indenture).

54. **_Termination Date._** The date at which the Aggregate Debt is paid in full in cash and all commitments under the Postpetition Agreement have been terminated, and at Postpetition Agent's election, the earliest to occur of: (a) the date on which Postpetition Agent provides, via facsimile or overnight mail, written notice to counsel for Debtors and counsel for any Committee of the acceleration of all Obligations pursuant to the terms of the Postpetition Agreement after the occurrence of an Event of Default; (b) the date that this Order is modified

WLM 518983.1

after the Final Hearing in a manner unacceptable to Agents and Lenders; (c) thirty (30) days after the date of the APA, if the Bid Procedures Order is not entered by the Court; (d) fifty-five (55) days after the date of the APA, if the Auction, as contemplated by the Bid Procedures Order has not occurred; (e) sixty-five (65) days after the date of the APA, if the Sale Order has not been entered, (f) seventy (70) days after the date of the APA, if the Closing of a sale of substantially all of the Debtors' assets, pursuant to section 363 of the Code has not occurred; and (g) December 7, 2009.

55.     *Trustee*.  Any trustee appointed or elected in the Cases.