IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- X
::
In re:                                                         :    Chapter 11
::
Velocity Express Corporation, et al.,                          :    Case No. 09-13294 (MFW)
                                                               :    Jointly Administered
Debtors.                                                       :
                                                               :    **Re: Docket Nos. 16 and 129**
---------------------------------------------------------------- X

## INITIAL OBJECTION BY TH LEE PUTNAM VENTURE ENTITIES TO THE DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 105(A), 363 AND 365 (I) AUTHORIZING AND APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT WITH RESPECT THERETO, (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS NECESSARY IN CONNECTION WITH THE SALE AND (IV) GRANTING RELATED RELIEF

Objectors, TH Lee Putnam Ventures L.P., TH Lee Putnam Parallel Ventures L.P., TH Lee Putnam Fund Advisors, L.P. and TH Lee Putnam Ventures (collectively the "TH Lee Putnam Venture Entities"), by and through its undersigned counsel, hereby object to the Debtors' Motion for an Order Under 11 U.S.C. §§ 105(a), 363 and 365 (I) Authorizing and Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing and Approving the Asset Purchase Agreement with Respect Thereto, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases as Necessary in Connection with the Sale and (IV) Granting Related Relief (the "Sale Motion") and in support of its objection (the "Objection")[1] respectfully states:

---

[1] The TH Lee Putnam Venture Entities reserve the right to file (and anticipate filing) a supplemental objection to the Sale Motion after conducting discovery and obtaining information previously requested from Velocity but not provided to the TH Lee Putnam Venture Entities.

## PRELIMINARY STATEMENT

1.  The proposed sale and sale process may be fundamentally flawed and in contravention of § 363(b) of the Bankruptcy Code, the General Corporation Law of the State of Delaware (the "DGCL") and other applicable bankruptcy and non-bankruptcy law. The papers filed by the Debtors and the testimony given in support of the Sale Motion leave unanswered too many important questions to allow this sale to be approved without considerable scrutiny. Contemporaneously with the filing of this Objection, the TH Lee Putnam Venture Entities have served formal discovery requests on the Debtors and certain other parties. In light of the accelerated sale process requested by the Debtors, it is incumbent upon the Debtors to cooperate with the discovery requests of TH Lee Putnam Venture Entities and any similarly situated stakeholders such as the Official Committee of Unsecured Creditors.

2.  The proposed sale, if approved, would at the outset of this proceeding determine all or most of the ultimate recovery for creditors and other parties in interest. Velocity Express Corporation ("Velocity") and its affiliated debtors (collectively, the "Debtors") are required to demonstrate to this Court that the sale of substantially all of the Debtors' assets for the proposed purchase price: (1) is in the best interests of the Debtors' estates; (2) that the proposed sale and sale process itself is fair and adequate; (3) that the interested parties have been given adequate and reasonable notice; and (4) that the purchaser is proceeding in good faith. *See In re Exaeris Inc.*, 380 B.R.741, 744 (Bankr. D. Del. 2008).

3.  The Sale Motion does not articulate a sufficient basis for a determination that the proposed sale and the sale process are in the best interest of the Debtors' estates; instead, it raises doubt as to whether the management of the Debtors have exercised properly their fiduciary duties.

4. The TH Lee Putnam Venture Entities respectfully submit that the following issues, among other discussed herein, should be examined properly, with expedited discovery on the same, in connection with the Sale Motion:

i) Have the Debtors exercised sound business judgment in negotiating the sale of assets to ComVest?

ii) To what extent has this transaction been structured so as to benefit management rather than to maximize the return to stakeholders?[2]

iii) What were the circumstances that lead to the execution of the Existing Credit Agreement with a Sale Covenant that may have limited the Debtors' ability to return value to its stakeholders?

iv) What were the reasons that the Management Group (defined herein) terminated the Recapitalization Agreement on August 14, 2009?

v) Did ComVest, in its capacity as one of the largest equity holders of Velocity, violate its fiduciary duties to the holders of minority equity interests in Velocity when it determined to acquire substantially all of the outstanding Senior Notes with the purpose of acquiring the Debtors' assets in a bankruptcy sale?

vi) Did the parties to the Management Equity and Participation Agreement breach their fiduciary duties and/or aid and abet the breach of such fiduciary duties that management owed to stakeholders?

---

[2] In an effort to make this determination, the TH Lee Putnam Venture Entities will seek disclosure of any discussions between ComVest Velocity Acquisition I, LLC ("ComVest") and the directors and officers of the Debtors regarding compensation or future employment and any agreements that may have been entered into regarding those subjects pursuant to Rule 6004-1(b)(iv)(B) of the Local Rules for the United States Bankruptcy Court for the District of Delaware. This may have the effect of disclosing why management of the Debtors is attempting to proceed with a sale of the assets to ComVest rather than consummating the Recapitalization Transaction.

3

## BACKGROUND

**A. Pre-Petition**

5. On March 19, 2009, MCG Acquisition, LLC, a group of managers led by Vincent A. Wasik, referred to as the "Management Group," made a proposal to purchase substantially all of Velocity's assets, subject to the Existing Credit Agreement. (Wasik Declaration ¶ 63).[3] According to the Sale Motion, the Special Committee authorized the Debtors to enter into a Recapitalization Agreement with the Management Group on July 31, 2009, and that "[t]he Recapitalization Agreement presumed that an entity formed by the Management Group, MCG Acquisitions LLC ("Newco"), would be successful in (a) securing financing, and (b) entering into agreements with holders of the Senior Notes to purchase the Senior Notes and the related warrants held by the Senior Noteholders, for an aggregate purchase price, assuming all Notes were purchased, of $10 million in cash plus, if the Recapitalization Transactions were consummated, shares of Common Stock of the Company equal to 10% of the Common stock of the Company outstanding after giving effect to the Recapitalization Transactions." (Sale Motion ¶ 21).

6. In July and August of 2009, Velocity solicited the consent of the TH Lee Putnam Venture Entities to the Recapitalization Agreement between the Debtors and Newco, and the TH Lee Putnam Venture Entities consented to the Recapitalization Agreement.

7. On August 4, 2009, Velocity filed a Form 8-K with the Securities and Exchange Commission (the "SEC") indicating that Newco had informed Velocity that it had received "consents from a majority of the holders of its Preferred Stock to a transaction consistent with the Recapitalization Transactions."

---

[3] "Wasik Declaration" refers to the Declaration of Vincent A. Wasik in Support of Chapter 11 Petitions and First Day Pleadings filed by the Debtors on September 24, 2009. (Docket No. 8).

4

8. On August 14, 2009, ComVest and three members of Velocity's management, namely Vincent A. Wasik, Mark T. Carlesimo and Garrett Stonehouse (collectively referred to as the "Newco Equityholders"), entered into a Management Equity and Participation Agreement that provided, among other things, that the Newco Equityholders would cause their affiliates and related persons and entities that have at any time been a member of the MBO Group (other than the Company) to deal exclusively with ComVest in connection with the formulation or consummation of any "Transaction Proposal." Further, the Management Equity and Participation Agreement provided that the Newco Equityholders could not, without the prior written approval of ComVest: (i) solicit, initiate, or knowingly encourage the submission of any Transaction Proposal; (ii) enter into any letter of intent or other agreement relating in any way to a Transaction Proposal; or (iii) participate in any substantive discussions or negotiations regarding, or furnish to any Person or provide any Person with access to, any material, non-public information with respect to, or knowingly take any other action to facilitate any inquiries or making of any proposal that constitutes, or may reasonably be expected to lead to, a Transaction Proposal without the prior written consent of ComVest.

9. On August 20, 2009, Velocity filed a Form 8-K with the SEC disclosing that on August 14, 2009, the Company received from Newco a notice terminating the Recapitalization effective of such date. According to the Form 8-K, the termination notice indicated that Newco had not obtained the necessary consents or reaffirmations of the holders of Velocity's preferred stock.

10. In addition to the apparently inconsistent representations made to the SEC by Velocity, Velocity made certain representations to the TH Lee Putnam Venture Entities in connection with the multiple solicitations of the TH Lee Putnam Venture Entities to execute the

Recapitalization Agreement or to consent to or otherwise reaffirm consent to a recapitalization of Velocity. Such representations are inconsistent with the August 4, 2009 Form 8-K in that such representations led the TH Lee Putnam Venture Entities to believe that Velocity had obtained the necessary consents to consummate the Recapitalization Agreement.

11. On September 8, 2009, TH Lee Putnam Ventures L.P., pursuant to section 220 of the General Corporation Law of the State of Delaware, requested the following documents:

 a. All consents and reaffirmations to such consents to the Recapitalization Agreement and the transactions, agreements and/or documents contemplated thereby, or to any similar recapitalization transactions, agreements or documents, signed by any holder of any series of preferred stock of the Company.

 b. All signature pages to the Recapitalization Agreement signed by any holder of any series of preferred stock of the Company.

 c. All consent solicitation statements or similar documents sent to holders of any series of preferred stock requesting consent to the Recapitalization Agreement, a recapitalization transaction generally, or a reaffirmation of any such consent, and the transactions, agreements and/or documents contemplated thereby, or to any similar transactions, agreements or documents.

 d. All solicitation statements or similar documents sent to holders of any series of preferred stock requesting signature of the Recapitalization Agreement as a party to such agreement.

 e. A complete list of all holders of all series of preferred stock of the Company, certified by the Company's Secretary and by its transfer agent(s) and/or registrar(s), setting forth the name and address of, and the number, series and class of shares of stock of the Company held by each stockholder as of August 14, 2009.

 f. Every document (including hard copies, emails and documents in electronic form) considered, reviewed, presented to or generated by the board of directors of the Company, or any committee or subcommittee thereof, relating to the Recapitalization Agreement and the transactions, agreements and/or documents contemplated thereby, and to any and all alternatives to the Recapitalization Agreement and the transactions contemplated thereby that were explored or considered, including, but not limited to:

  i. Analyses prepared internally or by third parties for evaluation of the Recapitalization Agreement and the transactions, agreements and/or documents contemplated thereby, and any alternatives to the Recapitalization Agreement and the transactions contemplated thereby;

ii. Presentations by management of the Company and/or Newco regarding of the Recapitalization Agreement and the transactions, agreements and/or documents contemplated thereby, and any alternatives to the Recapitalization Agreement and the transactions contemplated thereby; and

iii. Any notes, in any form, taken by any person present at any such meeting of the board of directors or a committee or subcommittee thereof.

g. Minutes of meeting (or written consents in lieu of meetings) of the board of directors of the Company, or any committee or subcommittee thereof, relating to the Recapitalization Agreement and the transactions, agreements and/or documents contemplated thereby, and to all alternatives to the Recapitalization Agreement and the transactions contemplated thereby that were explored or considered.

h. Any termination notice from Newco purporting to terminate the Recapitalization Agreement, and any prior or subsequent correspondence between the Company and Newco (including hard copies, emails and documents in electronic form) with respect to such termination or Newco's or the Company's failure to receive adequate consent or reaffirmation of consent from the holders of the Company's preferred stock to the Recapitalization Agreement and the transactions contemplated thereby.

i. Minutes of meeting (or written consents in lieu of meetings) of the board of directors of the Company, or any committee or subcommittee thereof, relating to the termination of the Recapitalization Agreement and any alternatives being considered in light of such termination.

12. Velocity did not respond to the request within the five day statutory period. Instead, on October 5, 2009, counsel for TH Lee Putnam Ventures L.P. received a letter dated September 21, 2009 in an envelope post marked October 2, 2009. In the response, Velocity Express refused to produce any of the requested documents except for the signature sheets to the Recapitalization Agreement.

**B. Post-Petition**

13. On September 24, 2009 (the "Petition Date") the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and have continued to operate and

maintain their businesses as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

14. One day after the Petition Date, the Debtors filed the Sale Motion, pursuant to which the Debtors seek to sell substantially all of their assets to ComVest.

15. Collectively, the TH Lee Putnam Venture Entities are the holders of 441,170 shares of series M convertible preferred stock; 1,509,693 shares of series Q convertible preferred stock; 689,325 shares of common stock; and warrants to purchase 382,399 shares of common stock. According to Exhibit A to the Voluntary Petition filed by Velocity, as a group the TH Lee Putnam Venture Entities are the holders of 35.8% of the total outstanding equity interests in Velocity, making the collective TH Lee Putnam Venture Entities the holders of the largest equity stake in Velocity.

16. According to Exhibit A to the Voluntary Petition filed by Velocity, ComVest is the holder of 2,083,945 Unit Warrants, making ComVest the second largest holder of equity in Velocity and the largest single equity holder.

17. The Declaration of Vincent A. Wasik in Support of Chapter 11 Petitions and First Day Pleadings (the "Wasik Declaration") outlines the steps that were taken by Velocity's board of directors (the "Board") to sell the Debtors' assets, including the establishment of a Special Committee[4] of independent members of the Board to "oversee the sale process." The Wasik Declaration also describes a Sale Covenant contained in the March 13, 2009 Existing Credit Agreement with a syndicate of lenders led by Burdale Capital Finance, Inc. ("Burdale").

18. On October 8, 2009, the Newco Equityholders and ComVest entered into the Amendment to Management Equity and Participation Agreement whereby all of the obligations

---

[4] Unless otherwise provided, capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion.

of the Newco Equityholders to deal exclusively with ComVest and to cause MBO Persons to deal exclusively with ComVest were waived.

**OBJECTION**

I. **The Sale Motion Fails to Meet the Requirements of Section 363(b) of the Bankruptcy Code.**

19. As stated in the Sale Motion, in order to approve the sale of substantially all of the Debtors' assets to ComVest pursuant to § 363(b) of the Bankruptcy Code, this Court must make a finding that a sound business justification exists for doing so. *See In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 175 (D. Del. 1991). The allegations contained in the Sale Motion (that the Debtors cannot effect a stand-alone operational reorganization and that the assets have been marketed extensively) are merely conclusory and do not answer obvious questions concerning the aborted Recapitalization Transaction that was negotiated extensively by the Debtors prior to the filing of the instant case. Nor do the Debtors pleadings begin to address the serious questions relating to the requirements of certain key members of the Debtors' management to deal exclusively with ComVest as provided in the Management Equity and Participation Agreement.

20. The Sale Motion also correctly states that "once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.* at 176. In the instant case, not only does the business justification for the proposed sale to ComVest remain unclear, but also there is reason to question whether: (1) the interested parties have been given adequate and reasonable notice; (2) the sale price is fair and reasonable; and (3) the purchaser is proceeding in good faith.

### A. The Debtors Have Not Given Adequate and Reasonable Notice of the Sale

21. With respect to the adequacy and reasonableness of the notice to interested parties, the TH Lee Putnam Venture Entities sought to determine the status of the proposed Recapitalization Transaction, including repeated telephone calls at the end of August and beginning of September 2009, all of which were unreturned by Velocity. On September 8, 2009, the TH Lee Putnam Venture Entities delivered a formal written demand pursuant to section 220 of the General Corporation Law of the State of Delaware, seeking information relating to the proposed Recapitalization Agreement. Velocity did not respond within the statutory timeframes, and only belatedly answered after the bankruptcy filing when it sent a letter dated September 21, 2009 in an envelope post marked October 2, 2009. The TH Lee Putnam Venture Entities did not receive the response until October 5, 2009. Velocity stonewalled the TH Lee Putnam Venture Entities and refused to produce the requested documents except for the signature sheets to the Recapitalization Agreement. Under the circumstances, including that the TH Lee Putnam Venture Entities held the largest equity interests in Velocity and that Velocity had made representations to the TH Lee Putnam Venture Entities that the required consents had been obtained to consummate the Recapitalization Transaction, a reasonable basis exists to authorize a thorough investigation, via an expedited discovery process, of the reasons that the Recapitalization Transaction was abandoned in favor of the transaction proposed by the Sale Motion. Approximately one month passed without any acknowledgment from Velocity of the TH Lee Putnam Venture Entities' attempts to understand the status of the Recapitalization Transaction, a fact that calls into doubt whether the notice of the sale of substantially all of the Debtors' assets to ComVest is reasonable and adequate. The delay by Velocity in giving notice of the proposed sale in light of the TH Lee Putnam Venture Entities' repeated inquiries creates

the appearance that the proposed sale was timed in a manner that was designed to chill the interest of other parties that may have had an interest in purchasing some or all of the assets of the Debtors.

### B. The Sale Price is Not Fair and Reasonable

22. With respect to the sale price outlined in the Sale Motion, the only creditors who will receive any consideration are the senior secured creditor, holders of the Assumed Liabilities, parties to Assumed Contracts, and ComVest. However, in this case the circumstances surrounding the apparently simultaneous pursuit of the Recapitalization Transaction by the Management Group and the duties that the Newco Equityholders, a group with a substantial if not complete identity of interest with the Management Group, owed to ComVest under the Management Equity and Participation Agreement, provides a reasonable basis to inquire further into the proposed sale and the sale price. The fact that the Management Group will receive a 20% interest in ComVest raises a concern that the Management Group was persuaded to pursue the sale of assets to ComVest rather than to consummate the Recapitalization Transaction, potentially in violation of the fiduciary duties of the members of the Management Group. The appearance of such impropriety merits a formal discovery process to assure that the sale price outlined in the Sale Motion is fair and reasonable.

### C. The Good Faith Requirement

23. When a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbott Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-150 (3rd Cir. 1986). As alleged herein, ComVest is the holder of the largest equity interest in Velocity in addition to owning approximately 98% of the Senior Notes, the latter having been acquired by ComVest in apparent

contemplation of purchasing substantially all of the assets of the Debtors. ComVest apparently has persuaded the Management Group, and ultimately the Board of the Debtors, to enter into the Asset Purchase Agreement attached to the Sale Motion. The circumstances suggest that a formal inquiry into the pre-bankruptcy conduct of ComVest is appropriate in order to determine whether the Debtors can support a finding that ComVest has acted in good faith as required by § 363(b) of the Bankruptcy Code.

## II. The Sale is A Sub Rosa Plan and Should Be Denied.

24. The Sale Motion should be denied because a sale of substantially all of a debtor's assets that runs afoul of the plan disclosure requirements should not be approved. *See In re Braniff Airways, Inc.,* 700 F.2d 935, 939-940 (5th Cir. 1983) (holding court is without authority under the Bankruptcy Code to approve a transaction which has the practical effect of dictating some of the terms of any future reorganization plan because this would allow the bankruptcy judge and the debtor to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets."); 3 *Collier on Bankruptcy* ¶ 363.02[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2009) (stating that "[b]ecause there is some danger that a section 363 sale might deprive parties of substantial rights inherent in the plan confirmation process, sales of substantial portions of a debtor's assets under section 363 must be scrutinized closely by the court").

25. The Wasik Declaration and the allegations contained in the Sale Motion raise more questions than they answer. The Sale Motion should be denied because it seeks to transfer substantially all of the Debtors' assets without satisfying any of the disclosure requirements for a plan, namely the requirements stated in section 1125 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, the TH Lee Putnam Venture Entities respectfully request that the Sale Motion be denied unless and until the TH Lee Putnam Venture Entities and other parties in interest have had an opportunity to investigate through a formal discovery process whether the requirements of § 363(b) of the Bankruptcy Code are satisfied by the Debtors, and that the Court grant such further relief as it deems just and proper. The TH Lee Putnam Venture Entities hereby reserve the right to interpose such additional and further objections as they may deem necessary or advisable upon the conclusion of their review of the documents sought in discovery and the examination of the deponents identified in their deposition notices.

Dated: October 19, 2009
Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

_____
Steven M. Yoder (No. 3885)
Etta R. Wolfe (No. 4164)
Hercules Plaza, Sixth Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: syoder@potteranderson.com
ewolfe@potteranderson.com

-AND-

James L. Messenger, Esq.
LECLAIRRYAN
One International Place, Eleventh Floor
Boston, Massachusetts 02110
Telephone: (617) 502-8231
Facsimile: (617) 502-8241
Email: james.messenger@leclairryan.com

Michael E. Hastings, Esq.
LECLAIRRYAN
830 Third Avenue, Fifth Floor
New York, New York 10022
Telephone: (212) 446-5075
Facsimile: (212) 430-8079
Email: michael.hastings@leclairryan.com

*Attorneys for TH Lee Putnam Ventures L.P.,*
*TH Lee Putnam Parallel Ventures L.P.,*
*TH Lee Putnam Fund Advisors, L.P.,*
*and TH Lee Putnam Ventures*